The State *v.* Temple.

---

---

## The State *vs.* Temple.

In an indictment under the provisions of *stat.* of 1821, *ch.* 4, § 2, for burning a meeting-house, it was held not to be necessary to allege in whom was *the property* of the house.

Nor, *the value* of the house:

Nor, that the offence was committed *vi et armis:*

Nor, that the meeting-house was then *continued* to be used as a place for public worship. If the house had been abandoned, or desecrated to other purposes, that would be matter of defence.

The defendant was indicted on the statute of 1821, *ch.* 4, § 2, for wilfully and maliciously burning a meeting-house, in the night time, and after conviction, a motion in arrest of judgment was made by his counsel, for causes particularly set forth in the opinion of the Court.

*F. Allen*, argued in support of the motion, and cited the following authorities: *Russ. on Crimes*, 1677 ; 2 *East's P. C.* 621 ; *Chitt, Crim. Law*, 1104 ; 3 *Inst.* 96 ; 1 *Leach*, 245 ; 2 *East's P. C.*, 1034.

*Clifford*, Attorney General, *e contra.*

EMERY J., delivered the opinion of the Court.

The defendant, after verdict against him on indictment, moves that judgment thereon may be arrested for five causes, which he has assigned.

" 1st. Because it is not alleged in the said indictment whose " property the said meeting-house was, or that it was the pro- " perty of any person ; nor that the owner of said meeting-house " was complainer.

" 2d. Because it does not appear by said indictment but that " the property of the house was in the said *Temple* himself.

" 3d. Because it is not alleged in said indictment what the " value of said meeting-house was at the time of the burning, nor " that it was of any value.

" 4. Because it is not alleged, that the offence was committed " with force and arms.

" 5. Because it is not alleged that the meeting-house was then " continued to be used as a place of public worship."

In the statute upon which this indictment is founded, the offence of wilfully and maliciously burning the *dwellinghouse of another* is one of the offences described. But it is not made a requisite of description of the offence as to burning a meeting-house, church, court-house, town-house, college, academy, or other building erected for public use, that it should be alleged either that it was the property of another, or whose property it was, nor who was the complainer.

It is in general sufficient to lay the offence in the words of the statute by which it is created. In cases of obtaining money or goods, by false tokens or false pretences, the tokens and pretences should be specified. See *Rex* v. *Muney*, 2 *Str.* 1127.

In the case of the *President and College of Physicians* v. *Salmon*, 1 *Ld. Raymond*, 680, which was debt for the penalty for having practiced physic. It was objected that it was too gen-

eral, and ought to have specified in what he exercised or practiced physic. And further, that 34*th* & 35*th Henry*, 8*th*, gives power to particular persons, having knowledge of the nature of herbs, to practice some sorts of physic without incurring any penalty, and perhaps the defendant practiced within the act. But the Court said that the offence, made such by the act, is the exercising physic. And it is sufficient to lay it in the words of the act. As in an indictment upon 5*th Eliz. ch.* 4, it is sufficient to say that the defendant exercised such a trade without shewing what particular act he did. And the generality of the charge is no inconvenience to the defendant, because the proof is incumbent on the plaintiff.

If a person be indicted for burning the dwellinghouse of another, it is sufficient if it be *in fact* the dwellinghouse of such person, his tenure or interest therein is immaterial. *The People* v. *Van Blarcum*, 2 *Johns. Rep.* 105.

But supposing the defendant was part owner with others, that circumstance, if it would do him any good, should have been shewn in evidence by him on the trial. But it would deserve great consideration, whether even that, would amount to an excuse, unless it was done with the approbation of all interested with him. It has been held that the part owner of a ship may be convicted of setting fire to it, with intent to injure the other part owners, although he has insured the whole ship, and promised that the other part owners should have the benefit of the insurance. *Phelps' case*, 1 *Moody, C., C.* 263.

The authorities cited by the defendant's counsel, as settling what is necessary to be alleged technically in indictments for the crime of arson, do not seem to prove that such technicality is necessarily to be required in the indictment against the defendant.

If it had appeared on the trial that the property of the house was in the defendant, we may safely conclude that no conviction would have been obtained.

It is not in general necessary, in an indictment for a *statutable* offence, to follow the exact wording of the statute. It is sufficient if the offence be set forth with substantial accuracy, and certainty to a reasonable intendment. 2 *Gal.* 15, *U. S.* v. *Batchelder.*

Under the Colony Law of 1652, *Anc. Char.* 113, any person of the age of 16 years and upward, who wittingly and willingly and feloniously set on fire any dwellinghouse, meeting-house, storehouse, whereby it cometh to be burnt, was adjudged to be put to death and to forfeit so much of his lands, goods or chattels as should make full satisfaction to the party or parties damaged: and so the law continued for about fifty-three years.

Under that law, possibly it might be deemed indispensable to allege in whom the property was, because it was part of the judgment that the criminal should not only be put to death but also forfeit so much of his lands, goods or chattels as should make full satisfaction to the party damnified, and therefore probably the party should be named. But we have no history of any prosecution under that old Colony Law.

In a note to *Davis's Justice*, 197, as to the form of complaint for malicious burning of any other building than a dwellinghouse in the night, it is observed, " that the same form may be adopted " describing the building in the identical words made use of in " the statute. If a public building," direction is given, " to set " forth the public use for which it is designed, as follows, *viz :* " a certain meeting-house there situate belonging to the first par- " ish in the said town of B., and erected for public use, to wit, for " the public worship of God. And so of any other public build- " ings erected for public use, as school-houses, court-houses, acad- " emies, &c."

There would seem to be in some of the English cases, a scrupulosity as to introducing certain words in an indictment, and in others considerable laxity.

Thus at common law the terms voluntary, or wilfully and maliciously, are requisite. And although the 9 *Geo.* 1, *ch.* 22, does not contain these words in the clause applicable to burning, it is necessary that they should be inserted. 2 *East's P. C.*, 1021. But there is no occasion to call the place a *dwellinghouse* as in the case of burglary, the term *house*, alone will suffice. 1 *Hale*, 567.

Neither is it necessary to describe the kind of building intended. It is sufficient to state it according to the language used in the act on which the indictment is founded.

The State *v.* Temple.

And even if the proceedings be framed according to the words of 22, & 23, *Car.* 2, *ch.* 7, and aver the fact to be done in the night, and it be proved to be done in the day time, the allegation may be rejected as immaterial, and held good under 9 *Geo. ch.* 22, which does away all distinction as to the time within which the offence is committed. 2 *East's P. C.* 1021.

Still, it is in *England* considered necessary that the name of the owner of the house be stated, as in case of burglary. 2 *East's P. C.* 1034, or as unknown.

So a conspiracy by sinister means, to marry a pauper of one parish in *England,* to a settled inhabitant of another, is an indictable offence. If the marriage is by consent of the parties it is not indictable. When it is stated to have been by threats and menaces, it is not necessary to aver that the marriage was had against the consent of the parties, though that fact must be proved, *Parkhouse's Case,* 1 *East's P. C.* 462.

In a criminal charge, there is no latitude of intendment to include more than is charged. The charge must be explicit enough to sustain itself. 2 *Burr.* 1127.

An indictment need not ascertain more than shows the offence; not what aggravates it. 1 *Lev.* 203.

Neither needs there more certainty than the words of the statute import. 2 *Rol.* 226.

In this state of diversity of construction, and notions about precedents, we think the simple rule to hold, that the description of the offence in the words of the statute constituting it, or that the offence be substantially set forth, though not in the exact words of the statute, is generally safe and legal: and that neither for the 1st or 2d causes assigned by the defendant is the judgment to be arrested. We do not mean to disregard decisions as to the propriety of description required in cases of false tokens and pretences, and some other cases alluded to in *U. S.* v. *Batcheler.*

If this were an indictment for larceny in *England,* where it was considered important to appear whether it be grand or petit larceny, the *third* cause assigned might be of some consequence. Though it is said by respectable authority, 2 *Hawk. Pleas of the Crown, ch.* 25, § 75, that it is not clear that the worth of the

The State *v.* Temple.

thing stolen is required to be set forth in an indictment for larceny, for any other purpose, than to show that the crime amounts to grand larceny : ·and the better to ascertain the crime in order for a restitution ; or in an indictment for trespass, for any other purpose than to aggravate the crime. We do not perceive in the third cause assigned any ground for arresting the judgment.

As to the 4th cause. At common law, the words *vi et armis,* were necessary in indictments for offences which amount to an actual disturbance of the peace, as rescues, assaults, &c. but it seems that·they were never necessary where it would be absurd to use them, as in indictments for conspiracies, slanders, cheats, because cheating is clandestine, escapes, and such like ; or for nuisances in the defendant's own ground, &c.

And malicious burning is usually performed in secrecy. What is more difficult to trace than the stealthy steps and movements of the incendiary ? They are like the pestilence which walketh in darkness.

But, however material these words may have been by the common law, by the *stat.* 37, *Hen. VIII, ch.* 8, it was enacted that indictments, lacking the said words, or any of them, shall be adjudged as effectual, to all intents, constructions, and purposes, as if the indictments had them. And *Hawkins* says, it is not easy to shew how exceptions for this cause, to indictments, ever could prevail since that statute, consistently with the manifest purport of it.

The provisions of this statute, so conformable to good sense, and in force in *England* before our ancestors came to this country, we conceive was incorporated into our common law, as so fully and elegantly stated by the late *Chief Justice Parsons,* 2 *Mass. Rep.* 534. " Our ancestors, when they came into this new world, claimed the common law as their birth-right, and brought it with them, except such parts as were judged inapplicable to their new state and condition. The common law thus claimed, was the common law of their native country, as it was amended or altered by English statutes, in force at the time of their emigration. Those statutes were never re-enacted in this country, but were considered as incorporated into the common law."

Some few other English statutes, passed since the emigration, were adopted by our courts, and now have the authority of law derived from long practice.   To these may be added some ancient usages, originating probably from laws, passed by the legislature of the colony of the *Massachusetts* bay, which were annulled by the repeal of the first charter, and from the former practice of the colonial courts, accommodated to the habits and manners of the people.

So much, therefore, of the common law of *England* as our ancestors brought with them, and of the statutes then in force, amending or altering it; such of the more "recent statutes as have been since adopted in practice, and the ancient usages aforesaid, may be considered as forming the body of the common law of *Massachusetts*, which has submitted to some alterations by the acts of the Provincial and State legislatures, and by the provisions of our constitution."

This construction has also been recognized in this Court before.

The fifth cause assigned is, that it is not alleged that the meeting-house was continued to be used as a place for public worship.

No such allegation is made necessary by terms used in the statute describing the offence.   Yet still it might become a material consideration in the defence.   For although a *building* might have been originally erected for a meeting-house, it also might be changed so totally in its uses and appropration, as no longer to merit the appellation of a meeting-house.

So a building erected for public use, as a court-house, may be sold for private use and become a tallow chandlery, as is the fact in the city of *Portland.*

If, in fact, this building, for the burning of which the defendant is found guilty, was really and utterly abandoned as a meeting-house, totally desecrated, not erected *and sustained* for public use, for the public worship of God; proof of these facts on the trial would have disproved the allegations in the indictments, and resulted in the defendant's acquittal.

Many years ago the like defence was successfully made by the late Chief Justice, as counsel, against a charge of injury done to such a building in the county of *Cumberland.*

It cannot, however, be requisite to make the averment in the indictment more extensive than the statute description of the offence. And the Court, in a motion in arrest of judgment, can no more take notice of this objection, than they could on an indictment for assault and battery, that the government had omitted to state that the assault was not committed in self-defence.

It has been adjudged, that in an indictment against an officer for disobedience of orders, it is not necessary to aver that the orders have not been revoked, or that they are in force. They are deemed to continue, unless contradicted by proof to be made in the defence. 5 *Term. Rep.* 607, *The King* v. *Holland.*

We cannot, therefore, perceive in the five causes assigned by the defendant, any sufficient legal ground for arresting judgment.