LEON M. DAVIS ET AL.

*vs.*

VINCENT SCAVONE

Kennebec.   Opinion, September 5, 1953.

*Dubord & Dubord,* for plaintiff.

*Eaton & Eaton,*
*A. Raymond Rogers,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J.

MERRILL, C. J.    This is a writ of entry brought to recover possession of certain real estate situated at Rome in the County of Kennebec. The defendant has pleaded the general issue with a brief statement. The brief statement attacks the title of the plaintiffs as invalid.

The plaintiffs' title rests on a conveyance made under a power of sale given by the will of Lydia E. Scavone who died testate December 14, 1940. The following is so much of her will as is pertinent to the questions here involved and the power of sale under which the plaintiffs claim:

> "After my just debts and funeral charges, I give bequeath and devise as follows: I authorize my executors, hereafter named, as soon as they deem it advisable in the settlement of my estate, to sell the Realestate in Maine and any other property belonging to me at time of decease.

> I give devise and bequeath to my husband Vincent Scavone now residing with me in Maine, and my sister's Mary M. Ross, 59 Morris St. New Brunswick, New Jersey, and Emma J. Clinton of Elberon, New Jersey, equal shares in Estate left by me, after debts are paid.
>
> I nominate and appoint said Sister's to be executors of this my last will, and I direct that they be exempt from any surety or surety's on their Official Bond."

Emma J. Clinton, one of the two executors named, never qualified as an executrix and, in fact, declined to serve as such.

The plaintiffs claim under a deed executed by Mary M. Ross, the other executrix, alone. The question to be decided is whether or not this deed conveyed a valid title to said property. Nothing was ever done in the administration of the estate except to issue a warrant and inventory and settle a claim by the State of Maine. On these facts which were admitted the presiding justice directed a verdict for the plaintiffs. Exceptions were taken to such ruling and are now before us.

There is no reason why an executor who is nominated in a will must serve, and provision is made by statute for the exercise of the duties of the office by those who legally qualify. See R. S. (1944), Chap. 141, Sec. 12.

The question of whether the *surviving* executor or executors or the *qualifying* executor or executors, they *being less than all* of the executors *named in a will*, can execute a power given to the executors is not without difficulties, and on which the decisions are not in entire accord.

The power devised to the executors in this will was a naked power as distinguished from a power coupled with an interest. By a naked power we mean a power devised to the executors without investing them with the legal title. *Bradt* v. *Hodgdon,* 94 Me. 559.

A devise of land to executors to sell gives a power coupled with an interest. In such case legal title vests in the executors and it may be exercised by those qualifying. This is true both at common law and under the statute of 21 Henry VIII, c. 4 hereinafter referred to. *Bonifaut* v. *Greenfield,* Cro. Eliz. 80, 78 English Reprint, 340. A devise directing executors to sell confers a power without interest, or a naked power. In the latter case the fee vests in the devisees or the heirs according to the remaining terms and provisions of the will, subject to being divested upon execution of the power. *Shelton* v. *Homer,* 5 Met. 462; *Larned* v. *Bridge,* 17 Pick. 339. See Sugden on Powers, 1st American Edition from the 3rd London Edition, Pages 106-111; Bergen & Bennett, 1 Caines Cases, 1, 16; *Houell* v. *Barnes,* Cro. Car. 382, 79 English Reprint, 933.

Formerly where a naked power was given to executors to sell, and one of them refused the trust, it was clear that the others could not sell. But the statute of 21 Henry VIII, c. 4 provided, that where lands are willed to be sold by executors, and part of them refused to be executors, and to accept the administration of the will, all sales by the executors that accept such administration shall be as valid as if all the executors had joined. A copy of said statute is to be found in Vol. V, Gray's Cases on Property, 348.

By Section 6 of the Act of Separation between Maine and Massachusetts it was provided:— "That all the laws which shall be in force within said District of Maine, upon the

said fifteenth day of March next, shall still remain, and be in force, within the said proposed State, until altered or repealed by the government thereof, such parts only excepted as may be inconsistent with the situation and condition of said new State, or repugnant to the Constitution thereof."

By our Constitution as originally adopted, by Article 10, Section 3 thereof it was provided: "All laws now in force in this State, and not repugnant to this Constitution, shall remain, and be in force, until altered or repealed by the Legislature, or shall expire by their own limitation." This provision of the Constitution as originally adopted has remained in force to the present time.

In *Commonwealth* v. *Churchill,* 2 Met. 118, 123, speaking of the Massachusetts Constitution as originally adopted, the court, speaking through Chief Justice Shaw, said:—

> "By that constitution, it was declared that 'all the laws, which have heretofore been adopted, used and approved in the colony, province, or state of Massachusetts Bay, and usually practiced on in the courts of law, shall still remain and be in full force, until altered or repealed by the legislature; such parts only excepted as are repugnant to the rights and liberties contained in this constitution.' This constitution has been construed as adopting the great body of the common law, with those statutes made before the emigration of our ancestors, which were made in amendment of the common law, so far as these rules and principles were applicable to our condition and form of government. *Commonwealth* v. *Leach,* 1 Mass. 59. *Commonwealth* v. *Knowlton,* 2 Mass. 534."

Although this case was subsequent to the separation, in a Kennebec County case decided by the Supreme Judicial Court of Massachusetts at the June Term 1807, that court

had said in the case of *Commonwealth* v. *Knowlton,* 2 Mass. 530 at 534:—

> "Our ancestors, when they came into this new world, claimed the common law as their birth right, and brought it with them, except such parts as were judged inapplicable to their new state and condition. The common law, thus claimed, was the common law of their native country, as it was amended or altered by English statutes in force at the time of their emigration. Those statutes were never reenacted in this country, but were considered as incorporated into the common law. Some few other English statutes, passed since the emigration, were adopted by our courts, and now have the authority of law derived from long practice. To these may be added some ancient usages, originating probably from laws passed by the legislature of the colony of the *Massachusetts Bay,* which were annulled by the repeal of the first charter, and from the former practice of the colonial courts, accommodated to the habits and manners of the people.
>
> So much therefore of the common law of *England* as our ancestors brought with them, and of the statutes then in force, amending or altering it; such of the more recent statutes as have been since adopted in practice; and the ancient usages aforesaid, may be considered as forming the body of the common law of *Massachusetts,* which has submitted to some alterations by the acts of the provincial and state legislatures, and by the provisions of our constitution."

This quotation was cited *in extenso* and with approval by this court in *The State* v. *Temple,* 12 Me. 214 at 219.

Interpreting the above quoted portion of the Massachusetts Constitution, the Massachusetts court in *Commonwealth* v. *Churchill, supra,* said:—

.

"But it was contended, at the argument, that under this provision no principle or rule of the common law could be regarded as adopted, unless it could be shown affirmatively that it had been adjudicated before the revolution. But we apprehend this would be much too narrow a construction. Before the revolution, we had no regular reports of judicial decisions; and the most familiar rules and principles of law—those which lie at the foundation of our civil and social rights—could not be so proved. No: We rely on usage and tradition, and the well known repositories of legal learning, works of approved authority, to learn what are the rules of the common law; and we have no doubt that these were the great sources to which the above pregnant provision of our constitution refers."

If there be language in the opinion in *State* v. *Knight*, 43 Me. 11, 116 et seq., that would seem to place a different construction on the Massachusetts Constitution, *Commonwealth* v. *Churchill* being a decision of the Supreme Judicial Court of that Commonwealth is conclusive upon the construction of its Constitution.

It is upon the foregoing provisions of the Constitution of the Commonwealth of Massachusetts, the Act of Separation and the Constitution of Maine, and the foregoing decisions that we hold that the Statute of 21 Henry VIII, c. 4, is a part of the common law of this State. Although we have found no express holding by the Massachusetts court that said statute was a part of the common law of Massachusetts, it, together with an English case interpreting it, was cited with approval in the case of *Shelton* v. *Homer et al.*, 5 Met. 462, 465.

In *Brassey* v. *Chalmers*, 16 Beav. 223, 51 English Reprint, 763, the question was whether a power given "to my executors hereinafter mentioned" could be executed by the sur-

vivor. Sir John Romilly, the Master of the Rolls, stated:—

> "This question depends on the words of the will,
> and whether the powers of sale thereby given is
> given to Thomas Seacombe and Thomas Brassey as
> individuals or in the character of executors of his
> will.
>
> It is settled, by repeated authorities, that where a
> naked power is given to several persons, it cannot
> be executed by the survivors. It is a power, the
> execution of which is intrusted to several indi-
> vidual persons jointly, which can only be executed
> by them all, and if one of them should die the au-
> thority will not survive. It is also equally settled,
> that if the power be annexed to the office any per-
> sons who fill the office of executor will have also the
> power which is attached to that office. The diffi-
> culty arises in cases like the present, where the
> power is given to certain persons by name, and
> they are also appointed executors, and in these
> cases the proper distinction seems to be that stated
> at the Bar, viz., that it is incumbent on the Court
> to ascertain in such cases whether the power is
> given to the executor or to the person. In this case,
> I think that the power is given to Thomas Sea-
> combe and Thomas Brassey individually, and not
> to them in their character of executors. That it is
> not given to the executors simply is plain. The
> words 'to my executors hereinafter mentioned' are,
> in my opinion, equivalent to these words, viz., 'to
> my executors Thomas Seacombe and Thomas Bras-
> sey,' whom I hereby appoint executors; in which
> latter case I should consider, that the power was
> given to the individuals. This view of the case is
> confirmed by the rest of the will. The executors
> are occasionally referred to generally as 'my ex-
> ecutors,' and occasionally individually as 'my said
> executors.' And it was, in my opinion, well ob-
> served by Mr. Baily, that the reference to them as
> individuals occurs in every case which relates to
> the sale of the land, and not in any other case."

However, on appeal, the Lord Justices did not concur in
this decision but reversed the same on the authority of

*Houell* v. *Barnes, supra. Brassey* v. *Chalmers,* 4 De G. M & G 526, 43 English Reprint, 613. In that case the power was conferred upon "his executors hereunder named." Commenting upon the case of *Houell* v. *Barnes,* Sugden in his book on Powers, *supra,* at page 164 says:—

> "But Jenkins thinks that this case depends upon the executors not being at first named by their proper names; and that they took *qua* executors. He gives it as his opinion, that if a devise be that A and B, the executors, shall sell certain land, and near the end of the will the testator also names them executors, if the one dies the other may sell, for the interest is annexed to the executorship by this repetition in the will. Mr. Hargrave has endeavored to establish, that where the power is given to *executors,* or to persons *nominatim* in *that character,* the survivor may sell, as the power is given to them *ratione officii;* and as the office survives, by parity of reason the authority should also survive. And the liberality of modern times will probably induce the courts to hold, that, in every case where the power is given to *executors,* as the office survives so may the power."

The history of the interpretation of the statute of 21 Henry VIII and similar statutes in this country has in general borne out the view expressed by Sugden in 1821 that the liberality of modern times would induce courts to hold that in almost every case where the power is given to executors, as the office survives so may the power.

One exception to the rule that the qualifying executor or executors can exercise the power of sale has been recognized, and that is that where the power of sale is a personal confidence reposed in the discretion of the executors personally, it must be exercised by all of those named. The old English case of *Houell* v. *Barnes, supra,* decided in 1634, where the power was given to "executors hereunder named"

and the case of *Brassey* v. *Chalmers,* 4 De G. M & G 526, 43 English Reprint, 613, where the power was given to "executors hereinafter mentioned," are authorities that such powers are given to the executors *virtute officii* and not *nominatim* individually.

In this view we concur. Nor do we think that because the executors under this will were authorized to sell "as soon as they deem it advisable in the settlement of my estate," coupled with the fact that the power was to "my executors hereafter named" is a sufficient indication that this power is a personal confidence reposed in the discretion of the executors later named in the will so that it must be exercised, if at all, by all of the executors named. This construction is in accord with the general statutory declaration with respect to the exercise of powers by a majority of executors found in R. S. (1944), Chap. 141, Sec. 12.

A full discussion of the American authorities on this subject may be found in 21 Am. Jur. pages 777-779, inclusive, Sections 708 and 709, and especially in the very full annotation referred to therein found in 36 A. L. R. 826 et seq. While individual cases may be found contrary to the decision herein made, we believe that the rule we have adopted is sustained not only by reason but by the weight of authority.

The contention of the defendant that the deed by the sole qualifying executor was void cannot be sustained.

The further equitable defense attempted to be set up by the defendant, that said executor's deed to the plaintiff Leon M. Davis, and upon which the joint title of the plaintiffs depends, was obtained by fraud and collusion, even if it could be sufficiently pleaded as a defense to a real action, a question upon which we need and do not express any

opinion, is so devoid of merit on the evidence that a discussion thereof would serve no useful purpose. There was no error on the part of the court below in directing a verdict for the plaintiffs.

The entry must be,

*Exceptions overruled.*