Deena McKELLAR

v.

CLARK EQUIPMENT CO., et al.

Susan CANWELL

v.

CENTRAL MAINE POWER
COMPANY, et al.

Supreme Judicial Court of Maine.

Argued Jan. 19, 1984.
Decided Feb. 23, 1984.

Strout, Payson, Pellicani, Cloutier, Hokkanen, Strong & Levine, Joseph M. Cloutier (orally), Esther R. Barnhart, Rockland, for plaintiff in No. KNO–83–318.

Rowe & Sanders, David M. Sanders (orally), Livermore Falls, for plaintiff in No. OXF–83–369.

Richardson, Tyler & Troubh, Harrison Richardson, Thomas E. Getchell, Portland, for Clark Equipment Co.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Michael D. Seitzinger (orally), Malcolm L. Lyons, Augusta, for Roderick and Young and Lime Products Corp.

Peter J. DeTroy, III, Portland, for Bacyrus.

Before ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

The two cases included in this consolidated Report to the Law Court pose the following questions. Is a wife's claim against her husband's employer and co-employee for loss of consortium resulting from a work-related injury to her husband, barred by the immunity and exclusivity provisions of the Maine Workers' Compensation Act, or alternatively, is it barred because it is derivative in nature? The Superior Court and the parties in each action have invoked this Court's authority pursuant to M.R.Civ.P. 72(b).[1] We conclude that the issues "are of sufficient importance and doubt" to justify the report of the cases to this Court and we determine that suits against an employer are barred by the Workers' Compensation Act and that suits against a co-employee are barred if they arise subsequent to September 14, 1979.

The parties entered into agreed statements of fact with respect to each cause and insofar as relevant the facts are as follows: Each plaintiff is the wife of a workman who received serious personal injuries in a work related incident. Both husbands were employed by businesses which provided worker's compensation and both received benefits in accord with the act, thereby waiving any cause of action in their own right. Plaintiff McKellar seeks to recover for her loss of consortium resulting from a work related injury to her husband occurring on December 18, 1979. Plaintiff Canwell seeks a similar recovery for an injury occurring to her husband on April 13, 1977. In both complaints the employer and co-employees are named as defendants.

I

The extent of the immunity afforded to employers who provide worker's compensation is controlled by two sections of the act. The immunity provision, 39 M.R.S.A. § 4 (Supp.1982–83), states in relevant part:

Such employers shall be exempt from civil actions because of such injuries *either at common law or under sections 141 to 148, under Title 14, sections 8101 to 8118 or under Title 18–A, section 2–804*.[2] (emphasis added)

The exclusivity section, 39 M.R.S.A. § 28 (1978), secures the employer's immunity with respect to the employee by providing that:

An employee of an employer, who shall have secured the payment of compensation as provided in sections 21 to 27 shall be held to have waived *his right of action at common law* to recover damages for the injuries sustained by him, *and under the statutes specified in section 4*. (emphasis added)

---

1. On a report brought pursuant to M.R.Civ.P. 72(b) the Law Court is required to determine both the facts and their application to the legal principles involved. *See Buck v. Kilgore*, 298 A.2d 107, 108 (Me.1972).

2. The statutory causes of action specifically included in the exemption relate to employer's liability in the absence of worker's compensation, actions under the Maine Tort Claims Act, and actions for wrongful death. None of these sections are implicated in the present proceedings.

The principal argument advanced by the plaintiffs is that the statute is clear and unambiguous. They argue that section 28 applies only to the employee's cause of action and that the plain meaning of section 4 does not bar a wife's action for loss of consortium. We agree that section 28 does not bar plaintiffs' claims but we disagree with plaintiffs' interpretation of section 4. Plaintiffs point to the fact that this Court refused to extend a consortium claim to the wife in *Potter v. Schafter*, 161 Me. 340, 211 A.2d 891 (1965), with the result that in 1967 the legislature amended the Married Women's Act to provide that "[a] married woman may bring a civil action in her own name for loss of consortium of her husband." 19 M.R.S.A. § 167–A (1981). Accordingly plaintiffs argue that their claim is based on a statutory cause of action, as distinguished from a common law action, and therefore is not barred by the immunity provision of the act. Despite the superficial appeal of this elementary approach, it does not survive careful scrutiny.

The statutory phrase "civil actions at common law" carries its own latent and inherent ambiguity. Black's Law Dictionary defines a common law action simply as "an action governed by common law, rather than statutory, equitable, or civil law." Such a definition is less than precise because there are few, if any, common law actions which have not been modified, limited, expanded or altered by legislative act.

Even the traditional common law action for negligence is, at this point in our history, a curious amalgam of decisional law and statute. The mere introduction of a statutory change, however, does not convert an area of common law liability into a statutory cause of action any more than a statutory cause of action would be converted by the fact of subsequent judicial interpretation. Further, it has long been recognized that the common law of Maine includes legislative amendments of common law doctrines as well as early English statutes and certain acts of the Massachusetts' legislature. *See, e.g., Davis v. Scavone,* 149 Me. 189, 194, 100 A.2d 425, 428 (1953); *Bean v. Central Maine Power Company,* 133 Me. 9, 12, 173 A. 498, 499 (1934); *Sacknoff v. Sacknoff,* 131 Me. 280, 285, 161 A. 669, 671 (1932); *Ahern v. McGlinchy,* 112 Me. 58, 60, 90 A. 709, 710 (1914); *Conant v. Jordan,* 107 Me. 227, 230, 77 A. 938, 939 (1910). In *Davis v. Scavone* we quoted with approval the following definition offered by the Massachusetts court:

> So much therefore of the common law of *England* as our ancestors brought with them, and of the statutes then in force, amending or altering it; such of the more recent statutes as have been since adopted in practice; and the ancient usages aforesaid, may be considered as forming the body of the common law ... which has submitted to some alterations by the acts of the provincial and state legislatures, and by the provisions of our constitution.

149 Me. at 194, 100 A.2d at 428. The designation of a concept of liability, or an element of recovery, as a common law action refers predominantly to the historical development of the concept and does not suggest the total absence of any ameliorative changes which are legislative in origin.[3]

---

3. The interrelationship between statutory law and decisional law can also be demonstrated by the fact that courts frequently rely on an unrelated statute, usually of some antiquity, in much the same manner as a judicial precedent would be used as a basis for legal reasoning. The resulting opinion is no less a part of the common law. *See,* Landis, *Statutes and the Sources of Law,* 2 Harvard J. Legisln. 7 (1965); Traynor, *Statutes Revolving in Common Law Orbits,* 17 Catholic U.L.Rev. 401 (1968); Stone, *The Common Law in the United States,* 50 Harv.L.Rev. 4 (1936). In fact, in *Potter v. Schafter* we were criticized for our failure, first, to recognize the change in the common law status of the wife, caused by the enactment of the Married Women's Act and, second, to bring about a change in decisional law by analogy. *See,* Note, 18 Me.L.Rev. 209, 210 (1966). The complex interrelationship produced by legislative amelioration of common law doctrine and by the use of statutes as judicial precedent to bring about changes in decisional law, renders a precise distinction between common law and statutory actions difficult to draw.

Consortium is an element of recovery under the common law of Maine and plaintiffs concede that a husband's action for consortium arising from an industrial injury to his wife would be barred by the language of section 4. This Court declined to extend the doctrine of consortium to include the claim of a wife in *Potter v. Schafter* but in doing so we expressly acknowledged that as a common law court we had the power to accomplish that result. 161 Me. at 341, 211 A.2d at 892. We declined to exercise our authority on the theory that the diversity of the interests affected merited legislative consideration. *Id.* at 342–43, 211 A.2d at 892–93. The legislature promptly responded by enacting 19 M.R.S.A. § 167–A. At the present stage of the development of the law in the context of a claim for consortium, the meaning of the phrase "common law action" is obscure. In interpreting section 4, therefore, we must look elsewhere for legislative intent.

Plaintiffs disregard *Roberts v. American Chain and Cable Co.,* 259 A.2d 43 (Me.1969) in which we defined the broad scope of the immunity conferred by section 4 of the Workers' Compensation Act. In *Roberts* the employer's assertion of immunity was upheld as a defense to a third-party action for contribution brought by a manufacturer who had been sued by an employee for injuries caused by the failure of a chain used in the course of employment. We resolved the immunity issue by reviewing legislative intendment in enacting the comprehensive scheme for worker's compensation and by giving effect to the underlying policy of providing certainty of remedy to the injured employee and absolute but limited and determinate liability for the employer. The societal compact achieved by substituting absolute liability for the employer's common law liability led to the following observation:

Generally ... [this Court] has looked upon this legislation as a transfer of the burdens resulting from industrial accidents, regardless of who may be at fault, from the individual to the industry and an ultimate distribution of such burdens upon society as a whole, by compelling the industry, in which the accident occurs, through the employer, to pay compensation benefits based on the average weekly wages of the injured employee in substitution for the loss of wages occasioned by the accident. . . . Our Court, on the other hand, has maintained that employers have rights and they also are entitled to rely on the certainty of the compensation to be paid and the amount of the services to be rendered. Perversion of the law, either to benefit the employee or protect the employer, has the tendency only to bring the law into contempt. . . . The intent of the statute was not to burden the industries of the State beyond the scope of the act as defined by the lawmakers.

*Id.* at 48–49. Although the facts in *Roberts* are readily distinguishable, the underlying rationale is not confined to that single case and is not easily rejected.

 The question now before us is whether the legislature intended to restructure the balance of the *quid pro quo* achieved in 1915 in the Workers' Compensation Act by its 1967 enactment of the provisions of 19 M.R.S.A. § 167–A. We are compelled to conclude that it did not.[4] The enactment of a statute of general application, extending the common law right to recover lost consortium to married women, neither expressly nor implicitly evidences any intent on the part of the legislature to override the specific provision conferring immunity on employers in return for the

---

4. Plaintiffs offer the further argument that we should adopt the view they espouse because it has received the tacit approval of the legislature. In 1977 and again in 1979 the legislature considered and rejected a bill which would have expressly prohibited a wife's claim for consortium if the injured husband received

worker's compensation benefits. *See,* L.D. 820 (108th Legis.1977) and L.D. 999 (109th Legis. 1979). We have abandoned any effort to draw precise meaning from legislative rejection. *See, Myrick v. James,* 444 A.2d 987, 991 (Me. 1982); *Anderson v. Neal,* 428 A.2d 1189, 1191 (Me.1981).

creation of absolute liability for industrial injury. *See, e.g., Beaulieu v. City of Lewiston,* 440 A.2d 334, 345 (Me.1982); *Beckett v. Roderick,* 251 A.2d 427, 431–32 (Me.1969). *See also Nichols v. Benco Plastics, Inc.,* 225 Tenn. 334, 469 S.W.2d 135 (1971) (general statute dealing with wife's right to sue for loss of consortium does not override special provision of Workmen's Compensation Act). We are persuaded that a claim for loss of consortium against an employer is barred by section 4 of the act even though it is asserted by the wife of an injured employee. Other jurisdictions have reached the same result. The persuasive force of the precedent from other states, however, is diminished by the diverse statutory formulations of immunity and exclusivity among the various states. *See Lunow v. Fairchance Lumber Company,* 389 F.2d 212 (10th Cir.1968) (construing Okla. law); *Coddington v. City of Lewiston,* 96 Idaho 135, 525 P.2d 330 (1974); *Arthur v. Arthur,* 156 Ind.App. 405, 296 N.E.2d 912 (1973); *Fritzson v. City of Manhattan,* 215 Kan. 810, 528 P.2d 1193 (1974); *O'Keefe v. Associated Grocers of New England, Inc.,* 117 N.H. 132, 370 A.2d 261 (1977) (interpreting legislation which effectively overruled *LaBonte v. National Gypsum Co.,* 110 N.H. 314, 269 A.2d 634 (1970)); *Reed Tool Company v. Copelin,* 610 S.W.2d 736 (Tex.1980); *Guse v. A.O. Smith Corp.,* 260 Wis. 403, 51 N.W.2d 24 (1952); *but see Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980); *King v. Viscoloid Co.,* 219 Mass. 420, 106 N.E. 988 (1914) (construing exclusivity provision in the absence of an immunity provision comparable to 39 M.R.S.A. § 4). *See also* 2A A. Larson, *The Law of Workmen's Compensation* § 66.20 (1982).

We note that plaintiffs' proposed construction of the immunity provision of the statute would lead to anomalous results when applied to the broad range of industrial injuries. A husband's claim for loss of consortium resulting from an industrial injury to his wife would be barred under all circumstances. A wife's claim arising out of an injury to her husband would not be barred. In the event of the death of the husband and the total loss of consortium, however, the wife's claim would be barred by virtue of the specific inclusion in section 4 of the reference to the Wrongful Death Act. Similarly, the reference to the Maine Tort Claims Act would immunize a governmental employer from the action of the wife even in those instances involving only injury to the employee-husband. Such irrational results cannot be squared with the basic premise of the legislative scheme and therefore such a construction is to be avoided. *State v. Rand,* 430 A.2d 808, 817 (Me. 1981); *Ballard v. Edgar,* 268 A.2d 884, 885 (Me.1970).

## II

The remaining issue on report relates to the extent of the immunity, if any, which section 4 provides to the fellow employees named as defendants. Until 1979 the immunity provision of the act made no mention of fellow employees. Effective September 14, 1979, P.L. 1979, ch. 493 amended section 4 by adding the following:

> This exemption from liability shall also extend to all employees, supervisors, officers and directors of the employer for any personal injury or occupational disease arising out of and in the course of employment.

■ The immunity of the fellow employee, which is now co-extensive with the employer's immunity, clearly bars the action by plaintiff McKellar, whose husband was injured in December 1979 after the effective date of the amendment.[5] Section 4 of the act immunizes the employer for the reasons discussed in Part I of this opinion and by virtue of statutory amendment the fellow employee enjoys the same immunity after September 14, 1979.

■ Section 4 does not expressly immunize the fellow employee in plaintiff Can-

---

5. We have no need to determine whether the wife's consortium claim is barred as a derivative action by the waiver imposed by operation of section 28.

well's action because her husband was injured in April of 1977, more than two years before the legislative amendment. Prior to September 14, 1979, an employee had a cause of action against a fellow employee for the latter's independent negligence. *Atkins v. Field,* 89 Me. 281, 36 A. 375 (1896); *Hare v. McIntire,* 82 Me. 240, 19 A. 453 (1890). Although the employee by receiving benefits waived his right to sue his employer under section 28, his right to sue parties "other than the employer" was preserved under 39 M.R.S.A. § 68. When the legislature enacted 19 M.R.S.A. § 167–A (1981) in 1967 the wife gained the right to present a claim for loss of consortium in such negligence actions against her husband's fellow employees. We conclude that plaintiff Canwell's action against the employee is not barred because, as of the date of the injury, the employee was not immune from any suit which might be brought by his fellow employee or the wife of that employee. Defendant Norbert Rose, the co-employee, argues that fellow employee immunity is an implied and necessary corollary to the immunity of the employer as it has existed from the inception of the Workers' Compensation Act. Further it is argued that the legislative history of P.L. 1979, ch. 493, suggests that the purpose of the amendment was only to clarify and confirm that the employer's immunity extended to and included the fellow employee. We conclude that such is not the case. Prior to September of 1979 an employee enjoyed no immunity from the suits of his fellow employees for independent acts of negligence. Thus, until amended, section 4 did not bar the suit of the employee for injury or the suit of the spouse for loss of consortium as against a negligent fellow employee. Our view is in accord with the general rule that in the absence of statute there is no justification for extension of tort immunity beyond the employer. *See* 2A A. Larson, *Workmen's Compensation Law* § 72.10 at 14–29 (1982). Accordingly,

we conclude that plaintiff Canwell's action against defendant Rose is not barred.[6]

 Finally, we note that plaintiff Canwell's consortium claim against the fellow employee will not necessarily result in an indirect action against the employer. The employer's immunity, as defined in *Roberts,* extends to all non-contractual rights of contribution and indemnity. 259 A.2d at 51.

The entry is:

Remanded to the Superior Court for the entry of the following relief:

In KNO–83–318: An order granting the motion to dismiss plaintiff's complaint as to defendants Lime Products Corporation, Ray Broderick and Earl Young.

In OXF–83–369: An order granting the motion to dismiss plaintiff's complaint as to Central Maine Power Company and an order denying the motion to dismiss as to Norbert Rose.

All concurring.

---

**6.** Because the husband's claim is not barred against the fellow employee, the wife's claim is

not barred as a derivative action.