State *v.* Underwood.

----

# COUNTY OF WASHINGTON.

----

State *versus* John Underwood *& al.*

A verdict was sustained for *larceny in this State*, against one who had goods in his possession which he had stolen in the Province of New Brunswick and brought with him into this State.

On Report from *Nisi Prius*, Davis, J., presiding.

This was an Indictment, charging the defendants with the crime of larceny. The articles stolen were alleged to be the property of one Christian Brahn; and the evidence, on the trial, sustained the allegation. It was alleged in the indictment, that the property was stolen from said Brahn, "at Eastport, in the county of Washington." There was testimony to prove that the property was stolen from the owner, from a vessel, to which he belonged, then at St.

Andrews, in the Province of New Brunswick; that the defendants were followed to Eastport, and the property found in their possession.

. A witness was called on the part of the State, who testified, that he was acquainted with the laws of the Province of New Brunswick; that the English common law was in force in that Province, except so far as it had been changed by statute, and that the volumes offered in evidence were the Revised Statutes of that Province.

These statutes were admitted in evidence against the objection of the prisoners' counsel.

Upon the evidence, the jury, by the consent of the prisoners, returned a verdict of *guilty*, subject to the opinion of the full Court.

The jury also found specially, "that the prisoners did originally steal, take, and carry away the goods in the Province of New Brunswick; and that said taking and carrying away were felonious by the laws of said Province, and in violation thereof."

If, in the opinion of the full Court, the verdict can be sustained, on the evidence in the case, judgment is to be rendered thereon, otherwise, a new trial to be granted.

*Appleton, Attorney General*, for the State.

*Bradbury*, for the defendants.

This case was argued, A. D., 1858, and continued for advisement. The opinion, concurred in by a majority of the Court, was drawn up by

. HATHAWAY, J. — The question presented by this case, is, whether or not stealing goods in a British Province, and bringing them, by the thief, into this State, and having them in his possession here, is larceny in this State.

The trial of a person indicted for larceny, at common law, must be had in the county in which it was committed, and, in legal contemplation, where goods are stolen in one county and carried into another, the offence may be prosecuted in

either county, for every asportation is, in law, a new caption. 3 Greenl. Ev., (8th ed.,) § 150, and notes.

"He who steals my goods from one who *had* stolen them, may be indicted as having stolen them from me, because, in judgment of law, the possession, as well as the property always continued in me; and he who steals them in the county of B, and carries them into the county of C, may be indicted in the county of C, *because*, the possession still continuing in me, every moment's continuing of the trespass is as much a wrong, and may come under the word *cepit*, as much as the first taking." 1 Hawk. P. C., c. 33, §§ 33 and 52.

"As the property in the goods stolen always remains in the true owner, unaltered by the wrongful taking, every carrying away is a new trespass. Hence, it follows that the *venue* may be laid in any county into which they are conveyed, as the offence of taking and converting is *there* in itself complete." Waterman's Archbold, p. 69, note 2; *Commonwealth* v. *Dewitt*, 10 Mass., 154, Rand's ed.; *State* v. *Douglas*, 17 Maine, 193; *State* v. *Somerville*, 21 Maine, 14.

For the *same reasons*, if a person steal goods in another State, (one of the United States,) and bring them into this State, he may be indicted and convicted of larceny here. *Commonwealth* v. *Collins*, 1 Mass., 116; *Commonwealth* v. *Andrews*, 2 Mass., 14, which cases are authoritative here, having been decided before the separation of Maine from Massachusetts, and the doctrine has been since recognized as the law in Massachusetts, in *Commonwealth* v. *Rand*, 7 Met., 475, and in *Commonwealth* v. *Uprichard*, 3 Gray, 434, in which last case the Court made a distinction between the case of goods stolen in another State, and that of goods stolen in a foreign country, and decided that the bringing into Massachusetts, by the thief, of goods stolen in one of the British Provinces, and the possession thereof, by him, in Massachusetts, is not larceny in that Commonwealth. In delivering the opinion of the Court, in that case, Mr.

State *v.* Underwood.

Chief Justice SHAW said, "laws to punish crimes are essentially local and limited to the boundaries of the State prescribing them; the commission of the crime in Nova Scotia was not a violation of our law; this indictment proceeds on that ground, and alleges the crime of larceny to have been committed in violation of the laws of this Commonwealth, and within the body of this county.  It is only by assuming that bringing stolen goods from a foreign country into this State makes the act larceny here, that this allegation can be sustained; but this involves the necessity of going to the law in force, in Nova Scotia, to ascertain whether the goods were stolen, so that it is by the combined operation of the force of both laws, that it is made felony here.  It is said that they commit a new theft, by the possession of stolen goods, in our jurisdiction.  But, what are stolen goods?  Are we to look to our own law, or to the law of Nova Scotia, to determine what is a felonious taking?  What is the *animus furandi*, and the like?  If we look to the law of Nova Scotia, and that law is different from ours in defining and prescribing theft, then we may be called on to punish, as a crime, that which would be innocent here.  If we look to our own law, then a taking and carrying away of goods in Nova Scotia, under circumstances which would not be criminal there, might be punishable here."  If this reasoning of the learned Chief Justice were well founded and correct, it would apply, with equal force, to the case of goods stolen in another State, as to that of goods stolen in a foreign government, for in their administration of criminal law, the several States are sovereign, and in their respective jurisdictions, and in the laws which regulate their internal police, they are as foreign to each other as each State is to foreign governments.  But it is not correct to say there is a necessity of going to the law in force in the foreign country, from which the goods were brought, to ascertain whether they were stolen.

The defendants were charged with violating the laws of Maine.  The allegations in the indictment were, that they

stole certain goods, in the county of Washington, the property of a certain person named. It was necessary for the government to prove the property in the goods, and all the material allegations in the indictment as alleged. It was incumbent on the government to prove that the defendants actually took and carried away the goods feloniously in that county, or had such felonious possession of them, *there,* as would, according to the laws of this State, constitute "in legal contemplation," a felonious caption.

The laws of the foreign country are not included among the elements which constitute the crime for which the defendants were indicted. They were not charged with violating the laws of the foreign country, and those laws could not be legally introduced on the part of the prosecution, in the proceedings against the defendants. Whether or not, the defendants were guilty of stealing the goods, must be first determined, according to our laws concerning larceny, and, if they were thus guilty, then the guilty possession of the goods *here,* was larceny *here.* But if the taking and carrying away of the goods, in the foreign government, was not in violation of the laws, *there,* and the defendants thereby became the lawful owners of the goods *there,* before they brought them to Maine, *that* would have been matter of evidence at the trial, which would have disproved the allegation in the indictment, of property in the former owners, and the prosecution must have failed. Without noticing particularly the various decisions of the courts of the several States, upon this subject, it is sufficient to say they have not been uniform.

In Vermont, it has been held that, where property was stolen in Canada and brought by the thief into Vermont, the thief might be indicted and convicted in that State; and such we hold to be the law in this State, in accordance with well established principles, applicable to prosecutions for larceny of property stolen abroad and brought by the thief into any county in the State; and such we had understood

State *v.* Underwood.

to be the law in Massachusetts, until the decision in *Commonwealth* v. *Uprichard,* before cited. In the *People* v. *Burke,* 11 Wend., 129, the defendant was convicted, in New York, for larceny of money *there,* which he had stolen in Canada and brought into New York. This conviction was under the statute which seems to have been enacted in consequence of a decision of the Court in that State, that, by the common law, such conviction would be unauthorized. In delivering the opinion of the Court in that case, Mr. Chief Justice SAVAGE said:—"It is not the larceny in Canada which we punish, but the larceny committed in the State of New York. The offender may be punished in any county where he carries the goods, as he is guilty of stealing wherever he has them. *This principle* was, in Massachusetts, without the aid of a statute, applied to the case of property stolen in another State and carried into that State." We do not perceive any difference in the applicability of the same principle, to the case of property stolen in a foreign country and that of property stolen in another State. Maine is a border State. Many of the inhabitants of the frontier towns are engaged in business which renders it necessary for them to have and to use their property on both sides of the line. Our treaty of extradition with England does not embrace persons charged with larceny, and, highly as we respect the decisions of the learned court of our parent Commonwealth, we are not disposed to depart from what we understand the law to be in this State, by adopting the doctrine of the *Commonwealth* v. *Uprichard* as law in Maine,—the more especially, when the consequence would probably be, *either* to render our border towns places of refuge for thieves, who might obtain a livelihood by stealing the property of our citizens and others, over the border, with every facility for a quick, and therefore a safe return to their places of retreat, on this side of the line, where they might enjoy the fruits of their pilfering and plunder with impunity, or *else,* to cause a legislative enactment, as was the case in New York, which would, un-

doubtedly, make the law what, without the aid of the statute, we understand it to be now.

*Judgment on the verdict.*

TENNEY, C. J., APPLETON and CUTTING, JJ., concurred. DAVIS, J., concurred in the result.

DAVIS, J.—It was well settled in Massachusetts, before our separation from that Commonwealth, that a person stealing goods in one State, and carrying them into another, may be convicted of the larceny in the latter. If the question were now raised for the first time, I should certainly dissent from the doctrine. I do not think it can be sustained, either from principle, or by the weight of authority. If this Court would deny the soundness of it altogether, and sustain the exceptions on that ground, I would concur in the decision.

But, if we conclude that we are bound by the early Massachusetts decisions, I see no way but to apply the doctrine to this case, and overrule the exceptions. The distinction which SHAW, C. J., attempts to draw in *Commonwealth* v. *Uprichard*, 3 Gray, 434, between the case of larceny in another State, and in a foreign country, is, in my judgment, entirely without any foundation. If a conviction can be sustained in the former case, I think it must be in the latter. And, until we are ready to reject the doctrine in both classes of cases, I think we should uphold it in both. I therefore concur in overruling the exceptions.

RICE, J., dissenting.—This case involves a principle of great importance. If this indictment be sustained, it will establish a precedent which, in my judgment, is unsound in principle and unsustained by authority. I do not, therefore, feel at liberty to permit the case to be placed upon the judicial records of our State unchallenged, or with my silent dissent.

The facts on which the indictment is based are not controverted. The prisoner committed a larceny in the Province of New Brunswick, and brought with him into this State a portion of the stolen goods. The indictment charges

him with a larceny of those goods, thus found in his posses-
sion, in the town of Eastport, in the county of Washington.

Do these admitted facts bring the prisoner within the
criminal jurisdiction of this Court, and render him liable to
punishment for a larceny in this State? I think not.

Every independent nation has exclusive jurisdiction over
its own members, and has the right to judge for itself how
far they are to be punished, and whether they are to be pun-
ished at all, or pardoned. Ruth. Inst., b. 2, c. 9, § 12. ·

The sovereign power of municipal legislation extends to
the regulation of the personal rights of the citizens of the
State, and to every thing affecting their civil state or condi-
tion. It extends, with certain exceptions, to the supreme
police over all persons within the territory, whether citizens
or .not, and to all criminal offences committed by them with-
in the same. The judicial power of every independent
State, then, extends, with the qualifications mentioned, to the
punishment of all offences against the municipal law of the
State, by whomsoever committed within its territory. It is
evident that a State cannot punish an offence against its mu-
nicipal laws, committed within the territory of another State,
unless by its own citizens. Wheat. Int. Law, pt. 2, c. 2,
§§ 6–13.

It is a general principle that the penal law of one country
cannot be taken notice of by another. *Ogden* v. *Folliot*, 3
.P. R., 726.

The penal laws of foreign countries are strictly local. 1
H. Black., 124.

In *Rex* v. *Powers*, Ry. & Moo. C. C. R., 349, the pris-
oner was charged with stealing, at Dorchester, a quantity of
wearing apparel. The things had been taken by the pris-
oner from a box of the prosecutor's, at St. Helier, in the
island of Jersey, and were afterwards found in his posses-
sion in Dorsetshire, where he had been apprehended on an-
other charge. The case was considered by all the judges,
except Lord RAYMOND, C. B., and TAUNTON, J., and they
held unanimously that the conviction was wrong.

· In *Mun* v. *Kaye*, 4 Taunt., 34, HEATH, J., says:—

State *v.* Underwood.

"Wherever a crime has been committed the criminal must be punished, according to the *lex loci* of the country, against the laws of which the crime was committed; and, by the comity of nations, the country in which the criminal has been found has aided the police of the country against which the crime was committed, in bringing the criminal to punishment;" and he adds, "the same has been the law of all civilized nations."

In *Regina* v. *Mudge*, 9 C. & P., 29, it appeared that the property had been stolen by the prisoner at Boulogne in France, and had been found in his possession in London, where he was taken before the Lord Mayor, and committed for trial. This case was held to fall within the principle of *Rex* v. *Powers*, and PARKE, B., directed the jury to acquit the prisoner on the ground of want of jurisdiction, which was done.

A similar decision was held in *Rex* v. *Anderson & als.*, for goods stolen in Scotland. 2 E. P. C., 772, c. 16, § 156.

The courts of no country execute the penal laws of another. Story's Confl. of Laws, § 620.

A foreign vessel engaged in the African slave trade, captured on the high seas in time of peace, by an American cruiser, and brought in for adjudication, would be restored. Per MARSHALL, C. J., in case of *The Antelope*, 10 Wheat., 69.

In the case of *Com.* v. *Uprichard*, 3 Gray, 434, cited by counsel for the defence, the prisoner was found in Boston, having in his possession certain gold and silver coin, which he had stolen in the Province of Nova Scotia. The indictment charged the prisoner with having committed a larceny of the coin aforesaid, in the county of Suffolk and Commonwealth of Massachusetts, of which offence he was found guilty by the jury; but the full Court, on a careful examination of the authorities, came to the conclusion that they had no jurisdiction of the offence.

In the case of *State* v. *Bartlett*, 11 Vt., 650, which was larceny of a yoke of oxen in Canada, but which were found

in the prisoner's possession, in Vermont, the prisoner was indicted in that State and convicted, and the conviction held to be correct. REDFIELD, J., in delivering the opinion of the Court, said, "If this question were entirely new, and now to be decided upon the weight of authority at common law, I confess I should incline to the view taken by the respondent's counsel, for it is expressly laid down by all English law writers upon this subject, that if the original taking be such whereby the common law cannot take cognizance, or if the goods be taken at sea, the thief cannot be indicted of the larceny in any country into which he should come with them." And he cites 2 Rus. on Cr., 175; the *Pirates' Case,* 3 Inst., 113; 1 Hawk., P. C., c. 33, § 32. But the Court in Vermont thought the rule, to take cognizance of such offences, had too long prevailed in that State to be changed, unless by act of legislation.

This opinion, it is believed, stands alone in the extent to which it goes, and is unsupported by any authority.

It is, however, contended that the doctrine finds support in analogous cases, where property stolen in one State is found in possession of the thief in another State of this Union. In such cases, it has been held that it was competent to indict and convict the thief in the State where he was found in possession of the stolen property. *Commonwealth* v. *Collins,* 1 Mass., 116; *John* v. *Andrews,* 2 Mass., 14; *Hamilton* v. *State,* 11 Ohio, 435; *State* v. *Ellis,* 3 Conn. 185. And in New York, under legislative provision, similar decisions have been had.

The decisions in these cases are based upon some supposed analogy between the common law rule respecting counties, and the condition of the United States, existing, as we do, under one general government. The supposed analogy will be found, on examination, not to exist. Text writers and jurists have undoubtedly been led into error on this subject, by a reference to the reason given for the common law rule for taking cognizance of a larceny in any county into which the stolen property may be taken by the thief. The reason

State *v.* Underwood.

generally given being, that every moment's possession of the stolen property is a new larceny, and therefore the party is necessarily guilty in any county into which the stolen property may be carried by him. If this were so, the conclusion would undoubtedly be correct, and the thief would be guilty of as many separate offences, for each of which he would be liable to distinct punishment, as there would be found divisible points of time, during which the stolen property was in his possession. But the statement of a proposition so monstrous is its most effectual refutation. Larceny consists in a felonious caption and asportation. When the property is thus taken and carried away, the offence is complete and cannot be multiplied into an infinite number of offences by a simple retention of the stolen property. The courts always treat it as a single offence in practice, subject to but one punishment, however long the stolen property may have been retained, or into how many counties it may have been carried by the thief. One conviction is a perfect bar to a second prosecution for one taking, without regard to the length of time the property may have been retained, or through how many counties it may have been transported.

The offence is single, and against the State or sovereignty within whose jurisdiction it is committed. For convenience, the rule that the offender may be punished in any county into which the property was carried was adopted. That rule is certainly wise and salutary, but the bad reason which has been given for its existence has led many into error as to the nature of the crime of larceny and the elements of which it is composed. Set aside this bad reason for a good rule, and all difficulty on this subject will vanish, and *constructive* larcenies be stricken from the catalogue of recognized crimes.

Nor do the authorities by any means concur in support of the doctrine of constructive larcenies between the States. It has been decided in *Simmons* v. *Commonwealth*, 5 Bin., 617; *Simpson* v. *State*, 4 Humph., 456; *The People* v.

State *v.* Underwood.

*Gardiner*, 2 Johns.; *State* v. *Brown*, 1 Hayw., 100, and in many other cases, that carrying property stolen in one State into another State, by the thief, is not larceny in the latter.

ASHE, J., in delivering the opinion of the Court in the case of the *State* v. *Brown*, cited above, uses the following pertinent and suggestive language:—"If this man were tried and convicted here, or tried and acquitted here, would the sentence of this Court be pleadable in bar to an indictment preferred against him in the territory south of the Ohio, where the crime was committed? I think not, because the offence against the laws of this State and the offence against the laws of that country are distinct; and satisfaction made for the offence committed against the laws of this State is no satisfaction for the offence committed against the laws there. The consequence, then, of trying this man here, and condemning him, will be, if a man steals a horse in one part of the continent, and goes with him to another, through several States, the culprit; according to the several laws of each State, being guilty of taking in each, may be cropped in one, branded and whipped in another, imprisoned in a third, and hanged in a fourth, all for the same offence. This is against natural justice."

Nor is this suggestion by any means fanciful, for if the doctrine of *continuing larceny* be sound, under the provision of § 2, art. 4, of the constitution of the United States, for the delivering up of fugitives from justice, he may, after punishment in one State, be returned to another and so on, and thus punished in all the States and territories through which he may have passed with the stolen property; and the same results may be reached in case the fugitive come from a foreign country, with whom we have treaty stipulations for the rendition of fugitives from justice. This certainly would be carrying the doctrine of *constructive* crime to an extent sufficiently broad to satisfy the most ardent advocates of imputed crime and exemplary punishment.

The fact, however, of the existence of the rendition clause

in the constitution of the United States, and of similar treaty stipulations with foreign governments, tends to show that the doctrine now contended for has not heretofore been supposed to exist. If so, why these provisions?

But the doctrine now contended for is not only contrary to natural justice, and unsound in principle, but it is inconvenient in practice, and involves the necessity of looking beyond our jurisdiction, and ascertaining, not only the acts done by the party accused, but we must also ascertain how these acts are characterized by the laws of the State or country in which they originally transpired. Thus, under this theory of constructive larceny, the property must have been *stolen* in the foreign jurisdiction, and brought into this State by the thief, to constitute larceny here. If the original taking in the foreign jurisdiction was not felonious, then the possession here could not be deemed felonious. To illustrate, by our R. S., c. 42, § 2, to convert a log, mast or spar, found in a certain situation therein described, is declared to be larceny. Anterior to the statute, the same act would have been trespass only. Similar acts may, for aught I know, be only trespass now by the laws of New Brunswick. Assume it to be so. Now suppose a man to obtain possession of a log, mast or spar in that Province, under such circumstances as, if taken in this State under the law above referred to, would be deemed larceny, and runs the same across the St. Croix into this State, and is found with it in his possession in this State, is he to be deemed guilty of larceny? Clearly not, for the reason, that the log, in the case supposed, was not originally *stolen* in New Brunswick. The possession there would have been *tortious* but not *felonious*, and, of necessity, such must be the holding here.

We must, therefore, of necessity, inquire into the provisions of the law, and the circumstances of the taking in the foreign jurisdiction, in this class of cases, if the doctrine now contended for is to prevail.

Nor do I assent to the doctrine, that the manner of obtaining possession of the property alleged to have been stol-

en in a foreign jurisdiction, or the law of that jurisdiction is only to be shown on the trial, as matter in defence. Such a rule would be an inversion of the whole order of criminal jurisprudence, and a gross violation·of that great elementary principle which is fundamental in all free governments, that every person is presumed to be innocent until he is proved to be guilty.

The person who has personal property in his possession, in the absence of evidence to the contrary, is presumed to be the owner thereof. Possession is, in itself, evidence of ownership. If a person is accused of having obtained possession of property feloniously, or tortiously even, here or elsewhere, the burden is upon the party making the accusation to sustain the charge by proof; not upon the accused to disprove it.

The rule sought to be established in this case might also well be contested on the ground of public policy. It is sufficient for us to punish those who commit substantive offences against our laws, within our· jurisdiction. To make ourselves the vindicators of the criminal laws of all nations, civilized or savage, on the plea that offenders against such foreign laws, by coming within our jurisdiction with the fruits of their former crimes in their possession, are thereby guilty of a violation of our laws, would be to carry the doctrine of comity to an unreasonable extent, and seems to me to be a work of supererogation.

It is also contended that the rule established in Massachusetts, before our separation from that State, by which parties coming within the limits of the State, with property in their possession which was stolen in another State, were held to be guilty of larceny in the Commonwealth, is binding upon us as a part of our own law, and that the rule thus established is broad enough in principle to cover the case at bar. The answer is, that the cases referred to do not in terms cover this case, and that, in Massachusetts, they have been held not to be authority to support a prosecution in all respects similar to the one at bar. 3 Met., 434. And,

further, the reasons on which these cases stand, are, even to the extent to which they go, wholly unsatisfactory.

But it is not necessary to question the authority of these cases. It is sufficient to say they do not cover this case, and it is not desirable to extend, by construction, an authority which assumes to establish, by inconclusive reasoning, a *constructive* crime.

For the reasons thus imperfectly set out, I am unable to concur with my associates, but think that the exceptions should be sustained.

MAY and GOODENOW, JJ., concurred in the dissenting opinion of RICE, J.