**STATE of Maine**

v.

**William H. REED.**

Supreme Judicial Court of Maine.

July 28, 1967.

Albert Chick Blanchard, County Atty., Bangor, for appellant.

Wesley E. Vose, Machias, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

Exceptions to the denial of respondent's motion for a mistrial are overruled. The respondent was convicted of murder at the May 1965 Term of the Superior Court in Penobscot County.

While the jury was examining a document, a spectator, seated in the courtroom, was observed holding an issue of a Boston daily newspaper fully open on the front page of which were the words "Crime Watchdog Backed by Volpe" in bold type. For a period from three to five minutes the front and back pages were clearly within the view of the jury had they looked, and for our purposes (as for the purposes of the

Justice in his ruling) we assume every juror saw them.

There was nothing in the paper in any way relating to the trial in progress, and nothing about particular criminal proceedings of any kind. The headline story apparently related to activities of a Crime Commission in Massachusetts.

On instructions from the Court, the spectator was removed from the courtroom, detained in custody, and was examined in chambers in presence of counsel and the respondent. The spectator had no connection with the police, investigating officers, or any state officer. He was simply reading his newspaper in the courtroom which of course he should not have done.

Counsel for the respondent stated his position to the presiding Justice in these words:

"The newspaper has no significance in this cause and to the best of counsel's knowledge had no information relating to the instant cause, but counsel contends that the display of the newspaper in the presence of the jury with the word 'crime' in bold type may be prejudicial to the respondent and in and of itself constitutes ground for mistrial."

The motion for mistrial was denied, exceptions taken, and there the matter ended. The record shows neither statement by the presiding Justice to the jury to disregard the incident, nor request therefor by the respondent.

 Did the presiding Justice abuse his discretion in not declaring a mistrial? The measuring rod is not whether jurors or any of them were in fact prejudiced, biased, or influenced by the incident, but whether their ability to render an impartial verdict may have been affected thereby. State v. Sanborn, 157 Me. 424, 173 A.2d 854; State v. Slorah, 118 Me. 203, 216, 106 A. 768, 4 A.L.R. 1256; York v. Wyman, 115 Me. 353, 98 A. 1024, L.R.A.1917B, 246.

Members of a jury, each qualified to serve, are not affected in their ability to render an impartial verdict by a headline in a Boston paper not in any way directed to the case before them. Men and women giving justice between the respondent and the State are not swayed in the slightest degree from their sworn duty by an occurrence in the courtroom of the nature described.

The State may stoutly assert with reason that men and women capable of jury service do not yield their views based on law and the evidence to a headline about a "Crime Watchdog" in Massachusetts. Surely the press does not possess the power attributed to it by the respondent.

The presiding Justice found there was nothing whatsoever prejudicial to the State or respondent. We are fully in accord with his decision.

The entry will be

Exceptions overruled. Judgment for the State. Case remanded for sentence.

WEATHERBEE, J., did not sit.