**Walter A. YOUNIE**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Sept. 24, 1971.

Sawyer & Sawyer, by Paula G. Sawyer, Augusta, for plaintiff.

Clayton N. Howard, Asst. Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WERNICK, Justice.

This is an appeal from a decision of a single Justice which denied post-conviction habeas corpus relief sought under 14 M.R.S.A. § 5502 et seq.

Petitioner, Younie, and two others were apprehended in Winslow, Maine on October 14, 1969 after they had been found riding in an automobile and after the police had ascertained that the motor vehicle had been stolen four days previously in Hartford, Connecticut. Before the presiding Justice and before this Court the case was presented in the posture that the petitioner may be considered the person who had stolen the automobile in Connecticut and who had brought it into Maine.[1]

In the Superior Court (Kennebec County) petitioner waived proceedings by indictment and was charged in an information with the crime of larceny of the automobile committed "on or about the fourteenth day of

October A.D.1969, at Winslow, in the County of Kennebec and State of Maine." Represented by counsel at the arraignment, Younie pleaded "guilty." The plea was accepted. Younie was adjudicated guilty of larceny in Maine and was sentenced to a term of two and one-half to five years in the Maine State Prison.

In this Court petitioner claims entitlement to post-conviction remedy on three basic grounds:

(1) Under the law of Maine, as it had been formulated at the time of the information against him, Maine lacked authority to charge the commission of the crime of larceny (a violation of 17 M.R.S.A. § 2101) against a person who had committed larceny of the automobile in another State and whose only independent conduct in Maine was that he had carried the automobile into this State and here retained possession of it.

(2) If such had been the law of Maine effective at the time of the information against petitioner, it should now be repudiated in a manner which will invalidate its operative force at the time of the information against petitioner.

(3) Petitioner had been deprived of due process of law because the Justice of the Superior Court presiding at the arraignment of the petitioner, prior to petitioner's having tendered his guilty plea, had made a remark which "erroneously implied to petitioner that the instant prosecution would end all potential criminal actions against him."[2]

---

1. The claims of the petitioner in his petition for writ of habeas corpus are that "the petitioner did not *take* or *carry away* anything from Winslow, County of Kennebec in the *State of Maine*" (emphasis the petitioner's) and that "as to the charge of larceny, not a continuing offense, the Constitution of the United States clearly says that a person charged with a crime has a right to be tried by a fair and impartial jury in the district where the crime was committed.

That would be in the State of Connecticut, Hartford."
 The brief of petitioner addressed to this Court asserts: "For purposes of Petitioner's case, it may be assumed that he did indeed steal the automobile in Hartford and subsequently brought it through at least two states into Maine."

2. The statement of the presiding Justice was: "Now, when you take it, it is larceny wherever you go with it. You can be prosecuted for it in every jurisdiction

Attention is first directed to the last, the third, claim for relief. The issue is raised for the first time in the petitioner's brief filed in the appeal to this Court. Since the petition for writ of habeas corpus failed to suggest the point, the single Justice lacked opportunity to consider and evaluate it. Relying upon the contents of the petition, he treated it as raising a pure issue of law which he believed to be foreclosed by the case of State v. Underwood, 49 Me. 181 (1858). The single Justice, therefore, found the petition "without merit" on its face, made findings to that effect and dismissed the petition without appointing counsel or assigning the matter for hearing.[3]

Regarding appellate practice generally, and as particularly directed to civil appellate practice, this Court said in Frost v. Lucey, Me., 231 A.2d 441 (1967):

"* * * it is fundamental and a rule of general application in the concept of appellate practice that save for certain recognized exceptions, [jurisdictional issues being explicitly mentioned] questions of error not raised and properly pre-

served in the trial court will not be considered on appeal." (p. 445)

The cases cited in Frost v. Lucey, supra, reveal the operation of the principle in the early days of Maine's statehood.

Since the statute governing post-conviction procedures and relief provides that the appeals in post-conviction proceedings shall be "in the same mode and scope of review as any civil action" (14 M.R.S.A. § 5508), this long-recognized principle governing appellate practice in civil cases generally has been applied to appeals from the final judgment of a single Justice in post-conviction habeas corpus proceedings. Lumsden v. State, Me., 267 A.2d 649 (1970), Gamblin v. State, Me., 281 A.2d 229 (1971).[4]

The rule is enforced even though the point raised for review concerns an alleged deprivation of a right of the petitioner under the Constitution of the United States. The Supreme Court of the United States has itself developed and followed, subject only to rare exceptions, the same doctrine.

---

through which you pass until some jurisdiction catches you and prosecutes you for it."

The statement was made amidst a context of several remarks in which the presiding Justice was undertaking to explain the concept that larceny is a continuing crime such that a taking and asportation in one State is renewed as a taking in another State into which the asportation has continued.

3. 14 M.R.S.A. § 5506 provides: "If the justice finds * * * that the petition is * * * without merit * * *, the request for appointment of counsel shall be denied and the justice shall file a decree setting forth his findings and his decision thereon shall be final."

The constitutionality of such procedure has been upheld, Brine v. State, 160 Me. 401, 205 A.2d 12 (1964), subject to the further proposition that if the presiding Justice by applying the statute has denied counsel to a petitioner alleging himself to be indigent, the "waiver" provision of 14 M.R.S.A. § 5507 will be insufficient, ipso facto, to preclude consideration of a subsequent petition for post-conviction relief predicated on other grounds. Brine

v. State, Me., 232 A.2d 88 (1967); Lemay v. State, Me., 244 A.2d 556 (1968); Westberry v. State, Me., 254 A.2d 44 (1969).

4. In Grass v. State, Me., 263 A.2d 63 (1970) the exceptional circumstance deemed to warrant a deviation from the established rule was the need to clarify requirements under Rule 11, M.R.Crim.P. dealing with important aspects of the administration of criminal justice. Since an underlying objective of the policy which denies appellant consideration of issues raised for the first time in the appellate tribunal is the orderly and efficient administration of justice, it was consonant with that policy to evaluate issues relating to a crucial stage of the judicial function in criminal cases—especially when orderly appellate procedures would be unaffected because the issue had been "argued orally upon appeal by both the petitioner and the State as though properly raised." Grass, supra, (p. 64).

In the present case, however, the State has strenuously objected that the issue is *improperly* raised in the appeal court and is seriously contending that the issue be denied consideration.

It repeatedly refuses to decide federal constitutional issues which are raised for the first time in the proceedings before it. The Court has applied the principle when review is asked of a decision of a State Court which involves issues under the Federal Constitution and which appellant had failed to raise in the State Court. The refusal to review is predicated on jurisdictional and policy grounds. Cardinale v. Louisiana, 394 U.S. 437, 89 S.Ct. 1161, 22 L.Ed.2d 398 (1969). For policy reasons, the Supreme Court of the United States likewise generally declines review which is sought from a decision of a United States Court of Appeals before which there had been an omission to raise an issue under the Federal Constitution. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)—especially footnote 2 at p. 147, and the cases therein cited.

We decline review of petitioner's third claim for relief because it is raised for the first time in his brief to this Court upon appeal, and we find no exceptional circumstances.

■ Petitioner claims erroneous the conclusion of the single Justice that the case of State v. Underwood, 49 Me. 181 (1858) had long ago settled the issue of "continuous larceny", as here involved, by affirming the lawful authority of the State of Maine to consider as the crime of larceny committed in Maine the holding of possession in Maine of property by one who had brought it into Maine with larcenous intent after he had stolen it in another State.

State v. Underwood, supra, was directed to the issue:

"* * * whether or not stealing goods in a British Province, and bringing them, by the thief, into this State, and having them in his possession here, is larceny in this State." (p. 182)

It may be correctly said, therefore, that the precise decision in *Underwood* pertains only to an original larceny committed in a foreign country rather than in a State of the United States. The case reveals clearly, however, that the decision was squarely predicated on unequivocal recognition by the Court that the law of Maine had *already* been *controllingly* established (because it had been the Massachusetts law operative in Maine as a District of Massachusetts prior to statehood in 1820) [5] as to circumstances in which a State rather than a foreign country was the site of the initial larceny. All three opinions in *Underwood*, supra, (the plurality opinions as well as the dissent) proceeded on such foundational premise.

The opinion of Hathaway, J., written for himself and three other Justices, categorically observed:

"* * * we are *not disposed to depart* from what *we understand the law to be in this State,* by adopting the doctrine of the Commonwealth v. Uprichard as law in Maine, * * *." (emphasis supplied) (p. 186)—

Commonwealth v. Uprichard, 3 Gray (69 Mass.) 434 (1855) being the case in which

---

5. Section 6 of the Act of Separation between Maine and Massachusetts provided: "That all the laws which shall be in force within said District of Maine, upon the said fifteenth day of March next, shall still remain, and be in force, within the said proposed State, until altered or repealed by the government thereof, such parts only excepted as may be inconsistent with the situation and condition of said new State, or repugnant to the Constitution thereof." Article 10, Section 3 of the Constitution of Maine, as originally

adopted, said: "All laws now in force in this State, and not repugnant to this Constitution, shall remain, and be in force, until altered or repealed by the Legislature, or shall expire by their own limitation."

A thorough discussion of the process by which the Massachusetts law which was applicable to the District of Maine prior to separation continued as the law of Maine after separation appears in Davis et al. v. Scavone, 149 Me. 189, 192–195, inclusive, 100 A.2d 425 (1953).

Shaw, C. J., in Massachusetts, *after* Maine had become a separate State, had declined to apply to an initial larceny in a foreign country the continuous larceny principle which had previously been formulated by the law of Massachusetts as applicable when only States were involved.

The concurring opinion of Davis, J., in *Underwood* agreed that:

"It was well settled in Massachusetts, before our separation from that Commonwealth, that a person stealing goods in one State, and carrying them into another, may be convicted of the larceny in the latter." (p. 187)

Davis, J., then mentioned that he disapproved the principle and said:

"If the question were now raised for the first time, I should certainly dissent from the doctrine." (p. 187)

Davis, J., realized, however, that at least four of his colleagues believed themselves to be "bound by the early Massachusetts decisions" (p. 187) as having established the law of Maine and that they were unwilling to *overrule* the existing law of Maine applying the doctrine of continuous larceny as among the States. Davis, J., therefore, concurred in result, asserting as his theory: " * * * until we are ready to reject the doctrine" as between one State of the United States and another, there is "no way but to apply the doctrine to this case, * * *" in which a foreign country was involved. The reasoning of Davis, J., was:

"The distinction which SHAW, C. J., attempts to draw in *Commonwealth* v. *Uprichard*, 3 Gray, 434, between the case of larceny in another State, and in a foreign country, is, in my judgment, entirely without any foundation. If a conviction can be sustained in the former case, I think it must be in the latter." (p. 187)

In the opinion of the three dissenting Justices, written by Rice, J., it was similarly acknowledged that the foundation underlying the conclusions of the five Justices who had agreed upon the majority result of the case was that Maine law had carried over the Massachusetts doctrine, established before Maine's statehood, that the "taking" element of larceny is renewed when the stolen property is carried, with continuing larcenous intent, into another State. To this position of the five majority Justices Rice, J., answered for the dissenters that the principle, as applicable between States, should either be overruled or distinguished when a foreign country is involved (as had been done in Massachusetts by the decision in Commonwealth v. Uprichard, supra). As the dissenting opinion phrased the point:

" * * * it is not desirable to extend, by construction, an authority which assumes to establish, by inconclusive reasoning, a *constructive* crime." (emphasis by Rice, J.) (p. 195)

We find it beyond doubt, therefore, that State v. Underwood represents a definitive pronouncement and reaffirmation of the controlling law of Maine as it had been established when Maine became a State, as it was in 1858 and as it has continued until and including the present since State v. Underwood has never been overruled in any aspect.

Hence, we decide that the facts of the present situation in which petitioner had committed larceny of an automobile in Connecticut which he then transported into Maine with larcenous intent, and the possession of which he had in Maine at the time of his apprehension, validly subjected him to the charge that he had committed the crime of larceny of the automobile in the State of Maine. At the time of the information against petitioner and of his plea of guilty to the information, under the law of Maine then operative and controlling, petitioner's plea of guilty was correctly accepted by the presiding Justice.

Petitioner has asked that we now overrule State v. Underwood and in a manner

which will afford him the post-conviction relief he seeks. He argues that the principle should now be

"independently evaluated and judged without any unnecessary reliance on some familial Maine-Massachusetts theoretical stare decisis spanning over 170 years with no intervening Maine evaluation."

It would seem appropriate to say of a principle which has persisted for "over 170 years with no intervening Maine evaluation" that the trappings of ancient origins and long endurance (without reexamination although opportunity for reevaluation existed) yield prima facie appearance of validity. If, in addition to this certification of time, the doctrine is seen to promote current public policy without precipitating serious countervailing evils, the case for its retention is strong.

In this vein, we regard as minor in thrust the contention that there is an element of artificiality and, therefore, conceptual taint in the approach, originating with the early common law, which regards larceny as a continuing offense. It might be a departure from "reality" first to define a crime as requiring an act of "taking" as well as an act of "asportation" and thereupon simultaneously to hold that the asportation will, in special circumstances, suffice to yield a new taking. Yet this fiction, if fiction it be, bears an extremely close relationship to the *reality* of an important public policy which stresses the serious wrongfulness of deliberate conduct which continuingly deprives an owner (or lawful possessor) of his property. This policy remains a primary value of our society. Indeed, it must be vigorously reinforced to counteract the present alarming increase of conduct which impairs law-abiding citizens in the enjoyment of their property. In light of this policy, we view any "fictional" aspect of the concept of larceny as a continuing offense to be a circumstance too trivial to justify, pending legislative handling of the problems presented, the abandonment of the common law principle which has been controlling law in Maine for almost two centuries and which continues to be the law in the majority of American States.

Additional factors asserted by the petitioner in support of his plea that State v. Underwood be overruled are similarly without cogency. Correct it might be that modern law enforcement has the benefit of the computer, rapid communication and rapid travel and that rendition procedures operate by which one State will deliver fugitives from the justice of another State when appropriate demand is made. Yet, the overriding consideration remains that the people of Maine are seriously concerned to *preserve,* as well as to develop, workable techniques to deter, and prevent, conduct within the borders of the State of Maine which disturbs the continuing enjoyment of benefits incident to the rights of ownership, or lawful possession, of property. Precisely because the movement and travel from one State into another is today so easy and rapid, each State has an interest in minimizing the number of larcenies in any other State since the goods stolen in one State can so readily appear in another and thereby cause law-enforcement expenses and other burdens which are incident to a traffic in stolen goods.

The State of Maine thus has a distinct concern with deterring, and preventing if possible, conduct in Maine which impairs any person, regardless of the State of the United States in which he might live or happen temporarily to be, in the lawful use of his property. Despite the availability of rendition procedures among the States, there is little satisfactory reason to rely solely upon rendition procedures and to discard a presently operative and time-tested mechanism which not only protects local interests but also affords indirect benefits to law-enforcement elsewhere and thus provides an additional measure of cooperation among the States.

We reject the proposal that State v. Underwood be overruled. We now reaf-

firm it as a pronouncement of controlling law that one who commits larceny of property in another State and who with continuing larcenous intent carries the property into, and retains possession of it in, Maine perpetrates a taking and asportation with larcenous intent in Maine, thereby committing the crime of larceny (under Maine law) in Maine.[6]

Subsidiary to his primary claim but predicated upon it is a contention of petitioner that the principle of continuous larceny as embodied in State v. Underwood violates rights of petitioner guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. Petitioner claims that (1) "he was deprived of his right to a trial by an impartial jury of the State and District wherein the crime was committed" and (2) he is deprived of his liberty without due process of law "because he is not free from future trial and punishment for the same act."

Both of these contentions are without merit. By the principles of State v. Underwood, here reaffirmed, Maine is dealing with *conduct in Maine*. The law of Maine characterizes the conduct in Maine—that petitioner with larcenous intent carried stolen property into Maine and retained possession of it in Maine—as having the legal effect of a "taking" and an "asportation" in Maine. Maine thus prosecutes and punishes *the conduct in Maine*, in accordance with its own laws, as a larceny committed in Maine.

It is incorrect, therefore, for petitioner to claim that he is deprived of the right of trial by an impartial jury in the State in which his crime was committed. The crime was committed in Maine by conduct which occurred in Maine and Maine affords the petitioner the right of trial by an impartial jury.

Likewise, petitioner's act of taking which had occurred in another State is an act

6. In the foregoing discussion we have elected to evaluate in a proceeding which seeks *post-conviction remedy* whether a presently controlling legal principle *derived from the common law* should be overruled. We have done this in order to deny such change and retain the common law doctrine.

It would be erroneous to infer from such consideration that this Court is prepared to evaluate modification, or abandonment, of a currently governing principle of the common law *in a post-conviction proceeding* either (1) to *announce* a change of the common law principle *without applying the change to the petitioner seeking post-conviction relief*, or (2) to *announce* the change and simultaneously *apply it to the petitioner*. Such undertaking would immediately suggest the difficulty that termination of the applicability of a principle of the common law savors more of the legislative than the judicial function (being comparable to legislative repeal of law as contained in a prior statute) and is thus different from the *interpretation* of the meaning of the *continuing words* of a *continuing* legal document such as a Constitution (traditionally a judicial function). In addition, it would precipitate thorny problems clearly recognizable (together with others dimly dis-

cernible) including: (1) whether a post-conviction proceeding is an appropriate forum for the mere *announcement* of a new principle of law without affording a simultaneous application of it; (2) whether, independently of the nature of the proceeding before the Court, the new principle, by whatever standards are held to be appropriate, is of character such that it shall be utilized to reopen any conviction which had *become final* prior to the time of the pronouncement of the new rule; and (3) whether if a new rule is not merely announced but is also *applied in a post-conviction proceeding to afford post-conviction relief to the petitioner before the Court*, such action, by force of logic and the constitutional mandate that equal protection of the laws be afforded, must be applied to reopen every other final conviction involving the same point and, therefore, constitutes, *automatically*, an adjudication that the newly formulated rule is fully "retrospective" in scope.

Problems so complex should await consideration in a subsequent case in which this Court finds itself obliged to announce a change of law in a proceeding seeking post-conviction relief and thus must confront the questions as squarely and unavoidably raised.

separate from, and independent of, the conduct for which Maine tries and punishes him. Petitioner errs, therefore, when he asserts that any future trial and punishment to which petitioner might be subject for his initial larcenous taking in another State is for the same conduct as occurred in Maine and for which he was tried and punished in Maine.

The entry is

Appeal denied.