**William H. REED**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

Oct. 13, 1972.

Paine, Cohen & Lynch, by William S. Cohen, Bangor, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and WEBBER, WERNICK, and ARCHIBALD, JJ.

WERNICK, Justice.

On May 20, 1965 petitioner was tried and found guilty by a jury in the Superior

Court (Penobscot County) and was thus adjudged convicted of murder. Because he sought direct review of his conviction—and pursuant to the then requirement of 15 M. R.S.A. § 1701 concerning a conviction of an offense punishable only by life imprisonment—sentencing of petitioner (mandatorily to life imprisonment) was postponed until after a final decision had been rendered by the Law Court. On September 15, 1967, after decision of the Law Court had been produced,[1] petitioner was sentenced to serve the remainder of his natural life in the State Prison. On the same day petitioner entered the State Prison.

During the approximately twenty-seven months between his conviction[2] and the imposition of sentence petitioner had been continuously confined in the Penobscot County Jail.

Petitioner now maintains that he is entitled to have this time during which he was confined in jail taken into account in the determination of his eligibility for parole under 34 M.R.S.A. § 1672(3).[3]

Since the Warden of the Maine State Prison refused to grant petitioner credit toward his parole eligibility for any time spent by him in the Penobscot County Jail prior to September 15, 1967, as an incident of which refusal petitioner becomes deprived of opportunity for good behavior time deduction computed on said time period, an actual controversy has arisen.

Petitioner's position in the dispute is that the denial of credit to him—in the accounting to determine his eligibility for parole —for the time spent by him in jail between his conviction and sentencing, as well as good behavior deductions in connection therewith, (1) renders unconstitutional 15 M.R.S.A. § 1701 (the statute which required postponement of petitioner's sentencing until after the Law Court's decision on its direct review of the conviction) —as violative of the federal Fourteenth Amendment guarantees of due process of law and the equal protection of the laws, and (2) alternatively, results in a violation of rights conferred upon petitioner by changes of the law of Maine occurring effective December 1, 1965—when the Maine Rules of Criminal Procedure went into effect and 15 M.R.S.A. § 1701 was repealed.

In an effort to vindicate his position in the controversy and to achieve legal relief, petitioner initiated a proceeding in the Superior Court utilizing as his operative vehicle, ostensibly, a motion for correction of sentence under Rule 35(a) M.R.Crim.P.[4] The Justice of the Superior Court, correctly viewing the issues of law involved as complex and important, reported the case to this Court for decision upon an Agreed Statement of Facts, under Rule 37A(a) M.R.Crim.P.

Rule 35(a) M.R.Crim.P., allowing for the correction and revision of any sentence, explicitly limits the time within which such action may be taken to the pe-

---

1. The decision is found in State v. Reed, Me., 232 A.2d 81 (1967).

2. "Conviction" for the purposes now involved had been settled in the law of Maine to signify the effect of a guilty plea or a guilty verdict by a jury (or finding by a Court if trial by jury had been waived). State v. Morrill, 105 Me. 207, 73 A. 1091 (1909). See: Donnell v. Board of Registration, 128 Me. 523, 149 A. 153 (1930).

3. Commencing with 1953 (P.L.1953, Chapter 382), persons serving a sentence of life imprisonment were made eligible for parole upon the expiration of a period of 30 years. In 1969 the 15 year period,

presently appearing in 34 M.R.S.A. § 1672 (3), became effective. (P.L.1969, Chapter 280)

34 M.R.S.A. § 1672(3) also provides that the above time period is subject to being reduced by a deduction for good behavior computed; as provided in 34 M.R. S.A. § 705, on the basis of up to seven days a month, with two extra days per month for a prisoner who is performing specified duties.

4. Some language used, however, suggests that petitioner might have had in mind, additionally, post-conviction "habeas corpus" under Rule 35(b) implementing 14 M.R.S.A. §§ 5502 et seq.

riod within sixty days from the time the sentence was imposed. The limitation is operative even when the sentence was "an illegal sentence or . . . imposed in an illegal manner." Since the sixty day period of limitation had long since passed when petitioner instituted the proceeding, relief would be required to be denied petitioner under Rule 35(a) M.R.Crim.P.

■ We are of opinion, however, that the present proceeding, regardless of the formal designations petitioner has attached to it, may be treated, substantively, as invoking the jurisdiction of the Superior Court to afford collateral post-conviction relief. We so regard it.[5]

In Green v. State, Me., 245 A.2d 147 (1968) this Court clarified that post-conviction remedy can be available through the vehicle of statutorily prescribed post-conviction "*habeas corpus*", pursuant to 14 M.R.S.A. §§ 5502 et seq. (and implementing Rule 35(b) M.R.Crim.P.), even though the relief appropriately requisite to be afforded goes beyond

". . . release of the petitioner or corrections of errors of law appearing on the face of the record, . . . [and] includes relief beyond the sphere of remedial action . . ." (p. 151)

and as might have been previously allowable under

". . . remedies with . . . limited and fixed common law connotations, . . .." (p. 150)

This Court further elucidated in Higgins v. Robbins, Me., 265 A.2d 90 (1970) that "*habeas corpus*", as provided by 14 M.R.S.A. §§ 5502 et seq. and Rule 35(b) M.R.Crim.P., is not the exclusive mechanism under which the Superior Court has jurisdiction to afford post-conviction remedy. Such relief is also available by resort to the "*declaratory judgment*" jurisdiction of

the Superior Court, in accordance with 14 M.R.S.A. §§ 5951 et seq. Higgins v. Robbins, supra, explained that even though statutory post-conviction "habeas corpus"

" ' . . . comprehends and takes the place of all other common law remedies . . . heretofore . . . available for challenging the validity of a conviction and sentence . . . ' " (p. 92), since

" . . . declaratory judgment is obviously not a common law remedy, . . . ." (p. 92)

jurisdiction exists in the Superior Court, to be exercised with sound discretion, to provide appropriately requisite post-conviction relief through the mechanism of "*declaratory judgment*" under 14 M.R.S.A. §§ 5951 et seq. (in addition to "habeas corpus" procedures pursuant to 14 M.R.S.A. §§ 5502 et seq.).

The present proceeding may be molded, therefore, into a collateral post-conviction case under either the "habeas corpus" route of 14 M.R.S.A. §§ 5502 et seq. or the "declaratory judgment" road of 14 M.R.S.A. §§ 5951 et seq.

We here confront a situation in which, to grant appropriate relief to petitioner if his rights are found to have been violated, we might be obliged to go beyond the post-conviction "habeas corpus" extensions as previously developed in *Green*, supra,— in which this Court required that credit be given in satisfaction of a sentence to the State Prison for prior time already served by the prisoner *in the State Prison* under another sentence held to be invalid. In the case at bar, we face the prospect that it might be necessary to adjudicate that time during which petitioner was confined *in the Penobscot County Jail* rather than in the State Prison shall be taken into account to allow a legally correct determination of when petitioner first becomes eligi-

---

5. The difficulties encountered by the Rule 35(a) M.R.Crim.P. approach were raised during oral argument. All counsel then stated that there would be no objection to an approach which would treat the case as lying within the framework of a collateral post-conviction proceeding.

ble for parole in the service of his sentence to life imprisonment.

For this reason, and although it is stated in *Green,* supra, that

". . . post-conviction habeas corpus . . . must be given such reasonable flexibility within the spirit of the statutory enactment that it may be an effective procedural vehicle for collaterally reaching all fundamental defects in the administration of criminal justice." (245 A.2d p. 150),

we believe it more consonant with the nature of the relief, if any, ultimately to be allowed petitioner in the instant situation that *"declaratory judgment"* be utilized as the operative vehicle, rather than statutory post-conviction "habeas corpus." [6]

 We, therefore, treat the present proceeding as one directed to the attainment of post-conviction remedy through the rendition by the Superior Court of a declaratory judgment, to be accompanied by such coercive relief as might be found appropriate—all pursuant to 14 M.R.S.A. §§ 5951 et seq. Furthermore, we treat the report of the case upon agreed statement of facts (insofar as the case has become the report of a declaratory judgment proceeding) as being pursuant to Rule 72(b) M.R.C.P.

The postponement of the imposition of the mandatory sentence of life imprisonment upon petitioner (until after the direct review of his conviction had been decided by the Law Court) was, unquestionably, required by the prevailing law of the State as it had then been definitively established under 15 M.R.S.A. § 1701, as judicially interpreted by State v. Chase, 149 Me. 80, 99 A.2d 71 (1953) and State v. Rainey, 149 Me. 92, 99 A.2d 78 (1953).[7]

---

6. In Higgins v. Robbins, supra, we took occasion to show the special appropriateness of *declaratory judgment* as a vehicle to afford collateral post-conviction relief directed " . . . to establish the commencement of a sentence . . . ." (265 A.2d p. 92)

7. Analysis of the historical antecedents of 15 M.R.S.A. § 1701 suggests that the exclusion of one convicted of a crime punishable by life imprisonment from the general mandate that "sentence shall be imposed upon conviction" seems explainable only as a mutational vestige of a mechanism useful when Maine inflicted capital punishment but deprived of meaningful function by abolition of the extreme penalty.

When the crime of murder (in some of its degrees) was punishable by death, and after the law permitted a review (through the executive or the judiciary) of the validity of the conviction, statutory provisions to preclude completion of the sentencing function (surely, in any event, to prevent the execution of the defendant) were obviously necessary, lest pronouncement of a reversal of the conviction be of no more pragmatic benefit to defendant than the "three yellow lilies [which] would spring up at the foot of the gibbet to proclaim his innocence" (as quoted to us by counsel for petitioner from Hungarian folklore).

Once Maine had abolished the death penalty (in 1887) and the offense of murder was rendered punishable only by life imprisonment, the nature of the problem—relative to any need to require postponement of the sentencing process or of the satisfaction of sentence—was significantly altered.

The elimination of capital punishment simultaneously, and automatically, eliminated the concern that a reversal of the conviction would be a mockery were it to follow the irreversible fact that defendant's life had been extinguished in execution of the sentence.

Similarly, since the offense now punishable only by life imprisonment, because it was at one time punishable by death, remained non-bailable after conviction and during pendency of a direct review of the conviction—and, therefore, defendant was required at all times to be held under confinement while review of his conviction was pending—no rational reason appears to justify depriving defendant of the opportunity to have his confinement operate toward satisfaction of his sentence to life imprisonment at the earliest possible time.

Prior to 1953—when life imprisonment sentences first became subject to parole release provisions—it might have been of no practical consequence that a defendant was required to remain committed, pending review of his conviction, without credit toward satisfaction of the sentence

As of December 1, 1965, however, this previously established law was definitively changed. Rule 32(a) M.R.Crim.P., effective December 1, 1965 required that in every case, without exception, "sentence shall be imposed without unreasonable delay"; and to ensure that all statutory provisions would be consistent with the Maine Rules of Criminal Procedure, 15 M.R.S.A. § 1701 (allowing the exception for the special situation of sentences to life imprisonment) was repealed. (P.L.1965, Chapter 356, § 54).[8]

A euphemistic characterization of the history of this case from and after December 1, 1965 is that there was oversight by all parties concerned,—the prosecuting authorities, the judiciary and the petitioner himself.

Although the law had been definitively changed, and it was explicitly provided by Rule 59 M.R.Crim.P. that the requirement of Rule 32(a) M.R.Crim.P. (for sentence to be imposed "without unreasonable delay") shall apply to all proceedings *then pending* on December 1, 1965 unless it "would not be feasible or would work injustice", petitioner remained unsentenced for a further period of more than twenty-one months—from December 1, 1965 until September 15, 1967.

Clearly, petitioner as of December 1, 1965, was involved in a proceeding which was "then pending." It was "feasible" and, indeed, would have averted rather than worked injustice to have had petitioner brought before the Court for sentencing "without unreasonable delay" after December 1, 1965.

■ We conclude that in the type of proceeding now before us, because of the nature of the case as aimed at collateral post-conviction remedy, we should avoid reaching the constitutional issues raised by petitioner and confine our decision to the effects of the alleged violation of the law of Maine as it had become effective on December 1, 1965.

We have already observed that by 1953 this Court had settled as the established law of the State of Maine the validly operative and controlling effectiveness of 15 M.R.S.A. § 1701 and its special provisions relating to sentencing for convictions of offenses punishable only by life imprisonment which are pending on direct review by the Law Court. State v. Chase, supra, and State v. Rainey, supra, (so holding concerning R.S. (1944) Chapter 135, § 29 —the statutory predecessor of 15 M.R.S.A. § 1701).

—insofar as defendant was, in any event, obliged to be confined for all of the remainder of his natural life. Such lack of practical consequence at a given period of history, however, should not be the measure of the theoretical correctness of a legislative principle; as the present case cogently illustrates, practical consequences (predictably or otherwise), and especially when we are dealing with the potential span of the lifetime of a human being, have a way of developing.

Finally, the consideration that a defendant might wish, and hence should have the privilege, to remain in custody "in the county of his conviction to assist counsel in . . . preparation of his appeal" (Glassman, Maine Practice, Rules of Criminal Procedure, Rule 38, Commentary, § 38.1 at p. 326), rather than to enter the State Prison in service of his sentence to life imprisonment, fails to

explain the exception specified in 15 M.R.S.A. § 1701. At least, it should be left to the defendant to make the choice. Inexplicably, 15 M.R.S.A. § 1701, however, categorically denied the choice to defendant. It compelled him to remain in custody in the County of his conviction and prevented him from entering the State Prison, as soon as reasonably possible after conviction, to commence service of his sentence.

8. The Legislature also repealed those provisions of 15 M.R.S.A. § 2115 which authorized a special type of direct review relative to conviction of any offense for which the punishment is imprisonment for life—i. e., the "appeal" from the denial of motion for new trial as distinct from an appeal from the judgment of conviction. (P.L.1965, Chapter 356, § 63)

Decision in the present case that such sentencing exception for a life imprisonment offense, required by 15 M.R.S.A. § 1701, is *now* to be regarded, in terms of the consequences resulting from it, as violative of the Constitution of the United States would be, essentially, to overrule *Chase,* supra, and *Rainey,* supra. Surely, insofar as those cases had sustained the statute and applied its requirements, they were, by implication, upholding the constitutional validity of the statute and *its* special exception.

Thus, were we to decide in favor of the petitioner the constitutional issues here being asserted by him, we should be *presently* promulgating a change of the constitutional law hitherto operative in this State.

Apart from the point that such project would involve us in the anomaly that we should be formulating a new principle of constitutional law as to a statute presently without effectiveness because it had been repealed December 1, 1965, we should confront the additional difficulties that over and above the *announcement* of the new principle of constitutional law, if we were to go further and *apply* it to benefit the present petitioner, *retrospective* overtones would be injected; there would *now* be attributed to events which had occurred *in the past* and (prior to December 1, 1965) consequences different from those required by the law as it was, *at that time past,* actually controlling.

Such aspects of the constitutional problems here being asserted bring to mind once again the doubts already expressed by this Court concerning its proper function in a collateral post-conviction proceeding. As we previously admonished in Younie v. State, Me., 281 A.2d 446 (1971) (footnote 6 at p. 452), serious questions arise as to

". . . whether a post-conviction proceeding is an appropriate forum for the mere *announcement* of a new principle of law without affording a simultaneous application of it;"

and

". . . whether if a new rule is not merely announced but is also *applied . . . to afford post-conviction relief to the petitioner . . .,* [it] must be applied to . . . every other final conviction involving the same point and, therefore, constitutes, *automatically,* an adjudication that the newly formulated rule is fully 'retrospective' in scope." (p. 452)

In light of these doubts, we decline to allow the present case, as a proceeding designed to achieve collateral post-conviction remedy, to serve as the forum in which might be undertaken the overruling of law in this State as it had been effectively settled statutorily and judicially by *Chase,* supra, and *Rainey,* supra, prior to December 1, 1965.

More particularly do we adopt this view since we are able to afford substantial justice to petitioner by a decision which avoids overruling prior precedent and is based on the operative law of this State as it was effective on and after December 1, 1965—all prior to the time when sentence was actually imposed upon petitioner.

■ On December 1, 1965 it had become the law of Maine, in accordance with the promulgation of Rule 32(a) M.R.Crim.P., and the repeal of 15 M.R.S.A. § 1701, that, notwithstanding that he had been convicted of a crime punishable by life imprisonment and that his conviction was pending on direct review by the Law Court, petitioner was entitled to have sentence imposed upon him without unreasonable delay after conviction. Hence, the failure of the Superior Court to sentence petitioner, for a period of more than twenty-one months from December 1, 1965 to September 15, 1967, was manifestly "an unreasonable delay" and in violation of the law then in effect.

To afford appropriate remedy to petitioner we must go further and decide, affirmatively, concerning the length of delay to be deemed "reasonable" in the circum-

stances and beyond which the sentencing of petitioner, consistently with the law as effective December 1, 1965, had been incorrectly postponed.

We are here concerned with circumstances which may fairly be regarded as novel and likely to remain without parallel. True, life imprisonment was a mandatory sentence so that it was unnecessary that sentencing be held off to await the results of a pre-sentence investigation to guide the sentencing Justice in the exercise of a discretion reposed in him. One counterbalancing factor, however, is the point that the State of Maine was in process of completing, and making effective, a substantial overhaul of its system for the administration of criminal justice. Further, the time of year was, generally, a busy and difficult period: the proximity to the end of the year would generally have increased ordinary business pressures and created the complications usually resulting from the advent of the festive spirit of the approaching Christmas-New Year holiday season. Finally, the petitioner himself had taken no steps to alert the prosecutor or the Court to the impact on his particular situation of the change of the law.

Delineations in any given situation as to the "reasonableness" of a delay, for whatever purpose, are so intimately intertwined with the particular circumstances and problems under specific consideration that it has become a truism to observe that each case as to "reasonableness" of time periods must be regarded as, essentially, law only unto itself. We take pains to reiterate the point as having cogent applicability in the instant case because of the extraordinary uniqueness of the circumstances presented and the nature of the issues raised.

■ Solely, therefore, for the purposes of decision of this individual case—and without intimation of whether in any other situation a greater, or lesser, period might lie within the range of "reasonableness"— we conclude that a delay in the sentencing of the petitioner for a period of three weeks after December 1, 1965 and until December 22, 1965 is here to be regarded as legally tolerable.

■ To provide adequate vindication of petitioner's rights, as they existed under the law of Maine effective from and after December 1, 1965, we decide that petitioner should be placed, for purposes of a determination of his eligibility for parole, in a position equivalent to that in which he would actually have been had he been sentenced—in conformity with the law then operatively effective—on December 22, 1965 and had thereupon entered upon the service of his sentence at the State Prison.

Petitioner is entitled to a declaratory judgment that (1) it is his legal right to have, and (2) the Warden of the State Prison shall give him, credit in the determination of his eligibility for parole (upon the sentence to life imprisonment which he is currently serving) for the time during which petitioner was confined in the Penobscot County Jail between December 22, 1965 and September 15, 1967. Cf. Wilson v. State of North Carolina, 438 F.2d 284 (4th Cir. 1971).

Petitioner makes the further claim that he be given the benefit, additionally, of "good time" deductions calculated on the period from December 22, 1965 to September 15, 1967, in accordance with the provisions of 34 M.R.S.A. § 705.

These "good time" deductions are predicated on "the record of conduct" insofar as it indicates that the convict had "faithfully observed all the rules and requirements of the State Prison . . .." The statute thus seems to presuppose that the deduction can be applicable only as to time actually spent at the State Prison. This view appears confirmed by the further statutory provision that the "good time" deduction (of seven days a month) fails to become absolute as each month actually is served; rather, it remains subject to withdrawal and restoration in the continuing discretion of the Warden of the State Prison.

It is, therefore, arguable that this Court should avoid authorizing "good time" deduction in the present instance in which the good behavior evaluation must be transposed to petitioner's confinement in a county jail.

■ Yet, the same violation of law which had deprived petitioner of his opportunity to have served a part of his life imprisonment time at the State Prison in satisfaction of his sentence and, therefore, of the imprisonment period by which he becomes eligible for parole, likewise, and simultaneously, denied him opportunity to benefit from the "good time" deduction. Basic fairness in the administration of criminal justice in this State mandates that governmental functioning in violation of the laws of the State should not foreclose petitioner's continuing opportunity of eligibility for "good time" deduction relative to the period he was confined in the Penobscot County Jail from December 22, 1965 until September 15, 1967.

We adjudicate, therefore, that there is here no legal impediment to the allowance of the benefit of good time deduction to petitioner predicated on his behavior during the time he was an inmate of the Penobscot County Jail from December 22, 1965 until September 15, 1967. The Warden of the State Prison is legally authorized to, and should, ascertain, by such means as he considers appropriate, whether petitioner's behavior at the Penobscot County Jail during said period had been a faithful observation of such of the State Prison rules and regulations as might reasonably be deemed applicable to petitioner's confinement in the Penobscot County Jail,—such determination to be, of course, subject to the Warden's continuing discretion under 34 M.R.S.A. § 705 to withdraw and reinstate the "good time" deduction in terms of petitioner's subsequent conduct while he has been and remains an inmate of the State Prison.

The entry is:

Case remanded to the Superior Court for entry of declaratory judgment pursuant to the opinion herein.

So ordered.

WEATHERBEE and POMEROY, JJ., did not sit.

All Justices concurring.